OHIO THOROUGHBRED RACING ASSN. ET AL., APPELLEES, *v.*
OHIO STATE RACING COMMISSION, APPELLANT.

(No. 6453—Decided March 7, 1961.)

*Mr. John J. Chester, Messrs. Dunkle & Edwards, Messrs. Gottfried, Ginsbery, Guren & Merritt, Mr. Howard R. Hirsch* and *Messrs. Marshman, Hollington & Steadman,* for appellees.

*Mr. Mark McElroy,* attorney general, *Mr. John A. Hoskins* and *Mr. Gerald J. Celebrezze,* for appellant.

*Per Curiam.* The Ohio State Racing Commission, appellant herein, has appealed to this court from a judgment of the Court of Common Pleas of Franklin County, Ohio, holding that Rule 311 of the Rules and Regulations of the Ohio State Racing Commission is "unlawful and unreasonable" so far as it makes a race track operator liable to revocation of his permit where any horse entered in a race at his track is doped or drugged.

The rules formerly made the trainers absolute insurers of and responsible for the condition of horses entered in a race regardless of the acts of third parties, whereas rule 311 makes permit holders or race track operators also absolute insurers.

The adoption of rule 311 was appealed from on behalf of the Ohio Thoroughbred Racing Association, Scioto Downs, Inc., Hilliards Raceway, Inc., Grandview Raceway, Inc., Northfield Raceway, Inc., River Downs, Ascot Park, Cranwood, Randall Park, Thistledown and Beulah Park Jockey Club. Such rule provides as follows:

"The trainer and the permit holder shall be the absolute insurers of and responsible for, the condition of the horses

entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of saliva or urine samples, or other tests, prove positive, showing the presence of any narcotic, stimulant, depressant, chemical or drug of any kind or description, the trainer of the horse may, in the discretion of the commission, be subjected to any or all of the following penalties; suspension, revocation of license, being ruled off; the permit holder may in such event be subjected to suspension, diminution or revocation of its permit or of a future permit. In addition, the owner of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the care or attendance of the horse may, in the discretion of the commission, be subjected to any or all of the aforesaid penalties. Permit holders, other than county or independent fairs, shall provide and maintain a quarantine area to include a group of stalls for the accommodation of the day's winning horses and such other horses as may be designated as provided in rule 310, and such horses shall remain in the quarantine area until required samples have been obtained by the veterinarian and until he shall have released said horses. All persons shall be excluded from said area except the owner or trainer of the horse from which the sample is taken, or their representative, the authorized veterinarian and his assistants and any representative of the commission.''

The validity and reasonableness of this rule were challenged in an appeal to the Court of Common Pleas of Franklin County by the race track operators who contended that in many cases horses are stabled away from the race track, are not brought to the track until shortly before the race and, as a result, are not under the control of the track operators.

The Court of Common Pleas, in the judgment entry, held that rule 311, ''insofar as it relates to permit holders, is unlawful and unreasonable. It is, therefore, ordered, adjudged and decreed that rule 311 is invalid insofar as it relates to permit holders.''

The test which the court below was required to apply was whether ''the rule as adopted or amended by the agency is reasonable and lawful.'' Section 119.11, Revised Code.

On behalf of the commission, it is argued that, because ''the so-called insurer rule'' has been in effect as to trainers of

horses, it is *ipso facto* reasonable and proper as to track owners.

It is contended further that "horse racing is a hazardous profession from the standpoint of public morality" (appellant cites *Racing Commission* v. *Robertson* [1959], case No. 204009, Common Pleas Court of Franklin County, unreported); that the "best possible example of this moral hazard is furnished, unfortunately, by stimulation"; and that "in an effort to win a race the unscrupulous do not hestitate artificially to stimulate a horse."

We are informed that all winning horses are tested for stimulation immediately after the race; that in 1960 eight cases of stimulation were detected; that occupations connected with racing "are already not held in the highest repute by the general public and these happenings only serve to lower this repute even more"; and, finally, that the public "becomes suspicious of the honesty of racing operations," with the result that revenues of track operators and the tax of the state both fall.

The Common Pleas Court rendered judgment as follows:

"This cause came on for hearing this 19th day of April, 1960, before the Court of Common Pleas, Franklin County, Ohio, and upon hearing, the court finds that Rule 311 of the Rules and Regulations of the Ohio State Racing Commission, filed with the Secretary of State of Ohio on the 14th day of March, 1960, to become effective on the 24th day of March, 1960, insofar as it relates to permit holders, is unlawful and unreasonable. It is, therefore, ordered, adjudged and decreed that rule 311 is invalid, insofar as it relates to permit holders."

We are informed that the trial judge wrote no opinion, and we are, therefore, unable to determine the reasoning adopted by him in arriving at this result. However, if the objective sought is to stop doping horses, the remedy applied seems to us to be entirely too sweeping and to encompass entirely too much territory.

We do not believe it is of primary concern that the Racing Commission adopt rules making race track operators guilty of things, whether in fact they had any connection with them, for the purpose of increasing tax collections and thereby enriching the State Treasury. Likewise, it is not readily apparent to us how making race track operators guilty of something they did not do will serve to alleviate public suspicion concerning the honesty of horse racing.

We note in the rule that the finding of any "narcotic, stimulant, depressant, chemical or drug" in the sample of saliva or urine tested forms the basis for possible revocation of the permit of the track operator. Apparently this is so whether the drug had or could have had any effect upon the performance of the horse in the race, because of either the kind or quantity of the element or compound involved.

We assume that a horse is entered in a race when the owner or agent files the required entry blank and pays whatever fee is required. If this is true, it would appear that a track owner might be found guilty of stimulating a horse and might have his permit cancelled in a case where a horse entered in a race was found to be doped, before the race was run, and prevented from running due to the diligence of the track owner.

We are asked to reverse the judgment of the court below holding rule 311 to be unreasonable and unlawful as applied to permit holders or track owners. However, we find ourselves in agreement with the result reached by the court below, and it follows that, in our opinion, the single assignment of error is not well taken and must be overruled, and the judgment of the court below affirmed.

*Judgment affirmed.*

DUFFEY, P. J., BRYANT and DUFFY, JJ., concur.

DUFFEY, P. J., concurring. As the majority opinion points out, the commission's rules do not require a horse entered in a race to be kept on the permit holder's grounds. It may be stabled elsewhere and brought to the track shortly before the race is actually run. While on the premises, a horse is under the immediate control and care of its owner, trainer and jockey.

The evil which the regulation is designed to prevent is stimulation. Yet it is apparent that this evil would rarely result from the act of the permit holder, his employees or agents but would most often arise from the acts of others having direct access to the horse either on or off the premises. If horses were to be quarantined for a period prior to a race, and the quarantine was subject to the permit holder's active control and supervision, the responsibility of the permit holder would be more apparent.

In considering the reasonableness of the present rule, I believe four factors stand out: (1) The harshness of the penalty imposed, (2) the ability of the permit holder to prevent the evil and protect his interest, (3) the probable degree of success that the rule will provide in preventing the evil, and (4) the availability of other means to accomplish the purpose. On all four grounds the present rule is hard to justify.

The penalty is permit revocation which may result in the destruction of a substantial investment. The established practices in handling animals, which the commission sanctions, at least in the sense of permitting them, render it difficult for the permit holder to prevent the evil. (It might be noted that permit holders include county agricultural societies.) The effectiveness of making the permit holder an absolute insurer of the conduct of others, who are themselves already liable, is dubious. Finally, alternative means such as effective control of access to the animal are available and apparently have not been tried.

For the reasons stated in the majority opinion and herein, I concur.