SAMPLES, DRIVER-TRAINER, APPELLANT, *v.* OHIO STATE RACING COMMISSION, APPELLEE.

Common Pleas Court, Mercer County.

No. 15443.   Decided August 27, 1963.

*Mr. Roy Warren Roof,* for appellant.

*Mr. William B. Saxbe,* attorney general, and *Mr. Clark G. Redick,* assistant attorney general, for appellee.

DULL, J.   This matter comes before this court on an appeal from a decision of The Ohio State Racing Commission rendered at Columbus, Ohio, on September 25, 1962, under the provisions of Section 119.12, Revised Code.

The court finds that all the procedural steps have been

taken properly and according to law, that all parties and pleadings are in order and properly before the court.

The matter was submitted upon the transcript of the hearing before The Ohio State Racing Commission at Columbus, Ohio, on September 25, 1962, and upon the briefs of counsel. Such briefs were submitted at the request of the court.

In its decision of September 25, 1962, The Ohio State Racing Commission (hereinafter referred to as the Commission) absolved the appellant of the second charge against him. This second charge alleged in substance: "that Samples on July 16, 1962, directed, permitted or caused a veterinarian to give a hypodermic injection of a drug, chemical or medicine to Begotta, which was under the care and attendance of Samples, who had entered the horse to start in a race scheduled on July 17 at Scioto Downs."

This court concurs in the decision and judgment of the Commission relative to the second charge.

Charge 1 in substance alleges: "that Samples was the driver and trainer of the horse Begotta which won the first race at Scioto Downs Race Track on July 17, 1962, and was found from an analysis of its urine to have had a drug of the nature of Dipyrone administered to it."

"Charge 1 alleges a violation of the so-called insurer rule, No. 311, the pertinent portion of which is as follows:

"The trainer and the permit holder shall be the absolute insurers of, and responsible for, the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of saliva or urine samples, or other tests, prove positive, showing the presence of any narcotic, stimulant, depressant, chemical or drug of any kind or description, the trainer of the horse may, in the discretion of the Commission, be subjected to any or all of the following penalties: suspension, revocation of license, being ruled off; the permit holder may in such event be subjected to suspension, diminution or revocation of its permit or of a future permit. In addition, the owner of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the care or attendance of the horse may, in the discretion of the Commission be subjected to any or all of the aforesaid penalties. . . ."

Relative to the first charge, this court concurs with the Commission in its decision and judgment that "The undisputed testimony discloses that Samples was the driver of Begotta, that the horse won the first race at Scioto Downs on July 17, 1962, and that an analysis of its urine disclosed that a drug of the nature of Dipyrone had been administered to it." However, from a careful reading of the transcript of the hearing before the Commission, particularly that of the appellant and that of Mr. Dick Rockhold, one of the owners of the horse "Begotta," there arises in the mind of the court a great doubt that the appellant was also *the* trainer of the horse "Begotta" under Rule No. 311 (emphasis that of the court). Certainly he was the driver and might be classified as one of the trainers, de facto, during the 1962 racing season prior to July 17, 1962. Prior to that date, according to his testimony on cross-examination before the Commission, the appellant drove the horse "Begotta" in three races. The first time in a race at Washington Court House, Ohio, on or about Decoration Day, the next was the race in which he qualified the horse at Scioto Downs on July 10, 1962, and the last was the race he won at Scioto Downs on July 17, 1962. Also, the appellant and the appellant's son, Mr. Larry Dale Samples, jogged and "blew out" the horse on the race track at Scioto Downs during the week between the qualifying race on July 10, 1962, and the race the appellant won on July 17, 1962. Further, according to such testimony, he made no charge to the owners for the jogging between these two races. The only charge was that for driving. The appellant entered the horse "Begotta" for the race on July 17, 1962, as agent of the owners. Further, although the appellant's name appears on the application of Mr. Dick Rockhold for a license as harness owner (Commission's Exhibit No. 2) as the trainer, his name was placed on the application without the knowledge or authorization of the appellant. This fact was corroborated by the testimony of Mr. Dick Rockhold on direct examination before the Commission. But Mr. Dick Rockhold was also one of the trainers, de facto, as well as one of the owners of the horse during this same period of the 1962 racing season. On direct examination before the Commission Mr. Dick Rockhold testified that he jogged and trained his horses—along

with the help of other persons—on the fairgrounds at Washington Court House, Ohio. He further testified that he placed the name and colors of the appellant on his application for his license as harness owner at the time of the application May 9, 1962, because in his words "I was just putting down what I thought was the right thing to put down, that he would be driving our horses if and when we got to the races." As is brought out time and time again in the hearing before the Commission, the appellant was attested to be primarily the driver of the horse "Begotta." But nowhere in Rule No. 311 is the word "driver" to be found. Hence, the only category in which he can possibly fit is "any other person shown to have had the care or attendance of the horse." And the court so finds. And by reason of such a finding, it logically follows that the duties and obligations of the appellant in such a capacity to the Commission and to the general public were far less than those of *the* trainer or owner (emphasis that of the court).

Rule No. 311 of the Rules and Regulations of The Ohio State Racing Commission, "the so-called insurer rule," is a harsh rule. In *Racing Assn.* v. *Racing Comm.*, 114 Ohio App., 80, the rule was declared invalid so far as it provides for the suspension, diminution or revocation of the permit of a holder thereof where a horse entered in a race at his track is found to be stimulated or doped by a drug. In the concurring opinion of Duffy, P. J., are found such pertinent words as: "while on the premises, a horse is under the immediate control and care of its *owner, trainer* and jockey" (emphasis is that of the court). And "In considering the reasonableness of the present rule, I believe four factors stand out: (1) The harshness of the penalty imposed." "The penalty is—revocation which may result in the destruction of a substantial investment."

The court concurs with the Commission in the exercise of its discretion that the appellant is guilty of some violation of its Rule No. 311. However, it is the finding and judgment of the court that the appellant violated Rule No. 311 as "any other person shown to have had the care or attendance of the horse "Begotta." It is the further finding and judgment of this court that in view of such prior finding and judgment, that the penalty of the continuing of the suspension of the appel-

lant and the revocation of his driver-trainer license is not supported by reliable, probative and substantial evidence.

Justice does not demand such a severe penalty because: (1) the chemical or substance found in the horse "Begotta" was a medicine and relaxing agent and not a drug or stimulant; (2) no charges were filed against the owner (and one of the admitted trainers) or "any other person shown to have the care or attendance of the horse" as a possible "insurer" of the horse "Begotta"; (3) there being no evidence to the contrary, this was the first charge ever brought against the appellant over a period covering many years, with an otherwise excellent record, of owning, driving and training harness horses.

Further, the appellant is the last in the line of "insurers." And none will deny that if the livelihood of an insurer is taken away or destroyed for a first violation of this rule, there would soon be no more insurers or insurance for the Commission or the general public.

Therefore, it is the judgment and order of this Court that the suspension of the appellant and the revocation of his driver-trainer license by the Commission be reversed, vacated and set aside and that the appellant be granted a new driver-trainer license and be declared eligible to apply for all such future licenses.

However, the court is of the opinion that the appellant merits some further punishment (The appellant lost approximately three weeks of driving and training harness horses during the 1962 racing season by reason of this violation in July of 1962). The appellant may be guilty of an error in judgment or ignorance of the Rules and Regulations of the Commission, but his long years of owning, driving, and training harness horses should have made him familiar with such Rules and Regulations and their interpretations. Such rules must be observed or declared invalid. And this Court is of the opinion that Rule No. 311 is one directed to the benefit of the Commission and thereby the general public.

Therefore, it is the further judgment and order of this Court that such new driver-trainer license of the appellant be suspended for a period of thirty (30) days, beginning on the

date it is issued by the Commission and at the end of such thirty (30) days such suspension shall be lifted and the appellant be accorded all the present and earned future rights and privileges of his new driver-trainer license.

Accordingly, the restraining order issued in this case on May 27, 1963, "granting to the Appellant the right to train and drive standard bred race horses at any and all standard bred race meetings during the year, 1963, until determination of the appeal" is ordered dissolved on the date that a new driver-trainer license is issued to the appellant by the Commission, then followed by the automatic suspension of the same for thirty (30) days.

Costs are assessed one-half against the appellant and one-half against the appellee.