CLERMONT NATIONAL BANK, APPELLANT, *v.* EDWARDS, SUPT. OF BANKS, STATE OF OHIO ET AL., APPELLEES.

[Cite as Clermont Natl. Bank v. Edwards (1970), 27 Ohio App. 2d 91.]

(No. 9788—Decided July 28, 1970.)

*Messrs. Bricker, Evatt, Barton & Eckler,* for appellant.
*Mr. Paul W. Brown,* Attorney General, *Mr. James G. Kahle* and *Mr. R. Brooke Alloway,* for appellees.

TROOP, P. J. The Clermont National Bank, hereinafter referred to as Clermont, sought a review of an order of Robert M. Edwards, superintendent of banks for the state of Ohio, granting permission for the establishment of a new branch bank to The Citizens Banking Company of Felicity, Ohio, to be located in the Clermont Shopping Center, Milford, Ohio. An appeal from the order was

attempted under the Administrative Procedure Act to the Common Pleas Court of Franklin County. That court sustained a motion to dismiss the appeal.

In a decision filed December 3, 1969, the Common Pleas Court said:

"* * * This court resolves the unresolvable by concluding that the so-called appellant does not have standing to prosecute the matter on this appeal."

Clermont's notice of appeal recites the entry of the court, March 31, 1970, as the order from which appeal is taken, and urges two assignments of error in support thereof. Although more elaborately stated, the assignments of error urge, in substance, that the Common Pleas Court was in error in that it failed to recognize that the June 2, 1969, order of the superintendent of banks was an "adjudication" order, and appealable, and that Clermont was a proper party to bring the appeal, having standing to prosecute the matter on appeal.

To narrow the scope of this discussion, a recent Supreme Court decision in *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13 is noted. The decision emphasizes and distinguishes the two types of appeal for which provision is made in the Administrative Procedure Act, R. C. chapter 119. The court said that the appeal, in *Fortner*, "clearly presents the question of the meaning and effect of R. C. 119.11" (page 16). The syllabus of the case is as follows:

"1. The review of proceedings of administrative officers and agencies authorized by Section 4 (B), Article IV of the Ohio Constitution, contemplates quasi-judicial proceedings only.

"2. Courts will not aid in making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case. (*Zangerle* v. *Evatt,* 139 Ohio St. 563, approved and followed.)

"3. R. C. 119.11 may not be employed to obtain judicial review of quasi-legislative proceedings of administrative officers and agencies."

The portion of R. C. 119.11 pertinent to the decision reads as follows:

"Any person adversely affected by an order of an agency in adopting, amending, or rescinding a rule * * * may appeal to the court of common pleas of Franklin county on the ground that said agency failed to comply with the law * * * or that the rule * * * is unreasonable or unlawful * * *."

Fortner was a permit holder who lodged an appeal from an amended Ohio Liquor Control Commission regulation although he had never been directly subjected to the application of the amended regulation. He was one of a substantial number of persons who, knowing that, under R. C. 119.11, an appeal operates to stay the imposition of the regulation, filed an appeal therefrom. The court, in *Fortner*, held that judicial review may not be obtained, under R. C. 119.11, from the "quasi-legislative proceedings of administrative officers and agencies."

The decision in *Fortner* serves to make it clear that courts are not to be concerned in the rule-making or rule-reversing function of administrative officers, boards or commissions, nor will they permit the challenging of the lawfulness of an administrative regulation in a vacuum. The court in *Fortner* states that a review of "quasi-legislative" proceedings of administrative officers and agencies, such as "was done in the instant case," is no longer possible because of the adoption of the Modern Courts Amendment to the Ohio Constitution.

This review is not concerned with administrative rule-making or revision, and *Fortner*, therefore, would appear to have no bearing on the instant case. Neither is the appellant challenging the adoption of or the "lawfulness of an administrative regulation." Justice Herbert calls attention, however, to R. C. 119.12 in the *Fortner* decision. His comment, at page 18, suggests that orders with a "quasi-judicial" subject matter, such as could give rise to the challenging of the reasonableness or lawfulness of the order, are covered by the appeal provision in R. C. 119.12. The comment is as follows:

"* * * Furthermore, it seems logical that any order which effectuates or employs a rule, amendment or rescission that is unreasonable or unlawful could not be an order 'in accordance with law' as that language appears in R. C. 119.12. * * *"

The comment prompted concurring Justice Duncan to observe that "Justice Herbert points out that quasi-judicial proceedings are open to attack under Section 119.12, Revised Code."

The superintendent of banks is authorized and directed, under R. C. 1125.06 (B), to issue rules, regulations, and standards necessary to carry out his duties under certain Revised Code chapters, among which is R. C. chapter 1111. Appellant herein is not, however, challenging the adoption, amending, or rescinding of a rule, but it appeals from an order of the superintendent issued June 2, 1969, pursuant to the provisions in the statutes relative to branch banks. As previously indicated, this appeal is bottomed upon the provisions in R. C. 119.12.

That the superintendent of banks is susceptible to the Administrative Procedure Act is apparent from a reading of R. C. 119.01 (A), which, in part, reads as follows:

"(A) 'Agency' means, except as limited by this division, any official, board, or commission having authority to promulgate rules or make adjudications in * * *, and the licensing functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state having the authority or responsibility of issuing, suspending, revoking or canceling licenses. Section 119.01 to 119.13, inclusive, of the Revised Code do not apply to * * * actions of the superintendent of banks, * * * in the taking possession of, and rehabilitation or liquidation of, the business and property of banks, * * * nor to any action that may be taken by the superintendent of banks under sections 1125.10, 1113.02, and 1113.05 of the Revised Code. * * *"

R. C. 119.01 through 119.13 do not apply to the activities of the superintendent in taking possession of a bank for the purpose of rehabilitation or liquidation, which are

set out in R. C. chapter 1113 and, more specifically, under R. C. 1125.10, pertaining to the examination of books, etc., R. C. 1113.02, covering "Conservatorship," and R. C. 1113.05, which details what a superintendent may do upon taking possession of the business and property of a bank without authority from a court. The necessary inference included in R. C. 1113.05 is that in all other matters he is subject to control by a court. R. C. chapter 1111 is not specifically excepted from the applicability of R. C. chapter 119 as to the superintendent of banks; therefore, his compliance therewith is obligatory.

Before dealing with the more knotty problems presented by this case, and to provide a little more background for the discussion, a few more statutory provisions need be noted. The definitions section of the Administrative Procedure Act, R. C. 119.01 reads, in part, as follows:

"(F) 'Person' means a person, firm, corporation, association, or partnership.

"(G) 'Party' means the person whose interests are the subject of an adjudication by an agency."

The applicable portion of R. C. 119.12, upon which appellant relies, is as follows:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication denying * * * the issuance * * * of a license * * * may appeal from the order of the agency to the court of common pleas * * *.

"Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county * * *."

Parts of R. C. chapter 1111, on "Banks-Branches," are pertinent, as follows:

*R. C. 1111.02*

"(B) Upon receipt of an application under division (A) of this section, the superintendent shall give written notice of its filing to each other bank whose principal place of business is located in the county where the proposed branch is to be located or within fifteen miles of the proposed branch. * * *"

*R. C. 1111.03*

"(C) In considering an application for a branch under division (A) of this section, the superintendent shall ascertain whether:

"(1) The convenience and needs of the public will be served by the proposed branch;

"(2) The population and economic characteristics of the area primarily to be served afford reasonable promise of adequate support for the proposed branch;

"(3) The proposed branch meets such other reasonable criteria as he may require."

The nub of this discussion is the contention of the appellant, Clermont, that it was subject to an "adjudication" and was adversely affected by the resultant order and for which reason it has "standing" and is a proper party to prosecute an appeal under R. C. 119.12.

This court recently gave attention to the basic matters with which this appeal is concerned in an unpublished decision cited as *Papp* v. *Darke County Agricultural Society*, No. 9402, issued December 2, 1969, examining necessary concepts as to "adjudication," "party adversely affected," and, who is a "proper party," or who has "standing" to appeal. The decision in the *Papp* case contributes to the consideration of this appeal by way of contrast and comparison.

Steve A. Papp *et al.*, citizens, taxpayers, and members of the Darke County Agricultural Society, first sought a restraining order in the Court of Common Pleas of this county against the Director of Agriculture of the state of Ohio. The case reached this court and it was decided that the rather indefinite language contained in R. C. 1711.10 necessitated a hearing by the director. In support of that conclusion, this court said:

"* * * There is no reason to deny the right of protest, deny a public hearing, or refuse a determination of the questions submitted by the group of citizens authorized to file a protest under the rule."

The director of agriculture did hold a hearing, and did so in conformity with R. C. 119.01 to 119.13, inclusive, and

departmental rules, following which a department order held the Darke County Agricultural Society as qualifying for public funds for which the director's certificate would issue. Papp sought to appeal under R. C. 119.12 to the Common Pleas Court, where an adverse judgment brought the case again before this court. One of the holdings of this court in *Papp* (among others necessary because of other facets of the case) was that the appellants were without "standing" to appeal under R. C. 119.12. The reasons for such conclusion are important to this review. The language in R. C. 119.01 defining "adjudication" provides one of the bases. Part of that section reads as follows:

"(D) 'Adjudication' means the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person * * *."

In order for Steve A. Papp to have "standing," he must have established that he was a "party"—the person whose interests were the subject of adjudication—and that he was not only a "person," but a "specified person" adversely affected by the order. Most significant in the determination of the status of Papp is the legislative provision affording him an entrance into the legal picture. R. C. 1711.10 reads as follows:

"If it is shown from the report of any county agricultural society, from witnesses, or otherwise that the annual exhibition held by such society was not conducted along moral or agricultural lines or was not of sufficient educational value to justify the expenditure of funds as provided * * * the certificate for such financial aid may be withheld by the director of agriculture."

This court has previously held that a "witness" who wanted to be heard should be afforded a hearing. A hearing was held at which Papp *et al.* appeared as "witnesses." They were "protesters," even "hostile" to the Drake County Agricultural Society. The group of citizens (Papp *et al.*) authorized by rule to appear at the hearing was never in any sense a "party." The only possible party involved directly in any action of the director, to withhold

or issue a certificate of participation in state funds, was a local agricultural society, as provided in R. C. 1711.01. In the *Papp* case, only the Darke county local society could be adversely affected if the director's certificate were withheld. The conclusion of this court, relative to the position of Papp *et al.,* is summarized as follows:

" 'Adverse' as used in the statutes reviewed is a troublesome term. In the sense that Steve Papp *et al.* were opposed, or hostile, to the decision of the director it was adverse to them. Mere discontent with an adjudication does not, however, make it adverse in the context of the statute using the term. A much more appropriate synonym is detrimental, that is, harmful to one's interests. The term is always coupled with 'party,' and if one is not a party, however detrimental an adjudication may be to one's ideas or state of mind, or even to his pocketbook, any definition of 'adverse' will suffice."

Applicable statutes afforded Mr. Papp no "standing" as a party or a "specified person," and he was not in fact adversely affected. Only his feelings were offended.

There is another group of cases strikingly similar to the *Papp* case, in fact and applicable law, typical of which are: *State, ex rel. The Lakewood Methodist Church,* v. *The Liquor Control Comm.* (1965), Franklin County Common Pleas Court Case No. 225,107, upon which appellees rely; *Erlenbach* v. *Liquor Control Comm.* (1965), 5 Ohio App. 2d 217; and *Corwin* v. *Board of Liquor Control* (1960), 170 Ohio St. 304. These cases involve the appearance of "witnesses," or "protesters," appearing at hearings required by R. C. 4303.26. Written notice is required to the appropriate authorities if application is made for a permit for an operation within 500 feet "from the boundaries of a parcel or real estate having situated thereon a school, church, library, or public playground." In addition to notice, the statute requires that the "authorities" be provided "a complete hearing."

A review of decisions pertaining to permit applications within the statutory limit as to schools, churches, etc., makes it abundantly clear that appearance at a hearing as

a protester does not produce a "party." Courts have required the hearing and considered the testimony adduced by the authorities as bearing "upon the admissibility of the issuance of the said permit," as suggested by the section, but those "authorities" offering only a "naked objection" (*Corwin, supra*) have never been recognized as having "standing" to appeal as parties or specific persons adversely affected.

R. C. 119.12 says that any party adversely affected by any order issued pursuant to any adjudication, other than an adjudication as to a "license," may appeal to the Common Pleas Court of this county. R. C. 119.01 says that a "license" is a "license," which isn't much help in deciding whether the order of the superintendent of banks authorizing a branch bank is a license. The term "license" does not appear in R. C. chapter 1111, the reference in R. C. 1111.03 being to "the consent" of the superintendent to the establishment of a branch bank. This special treatment of the act of the superintendent removes his order from the category of licenses and makes the act an "other than" adjudication.

A "party" or "specified person," adversely affected acquires "standing" most assuredly by legislative enactment. The legislature did not provide it to the citizens and taxpayers of Darke county, nor for the "authorities" of schools, churches, libraries and playgrounds under R. C. 1711.10 and 4303.26. It is necessary to examine the possibility of statutory support for the claim of Clermont that it is a "specified person" adversely affected. If there be such support it must come from R. C. 1111.02 and 1111.03. After receipt of an application, R. C. 1111.02 (B) requires the superintendent to give written notice to "each other bank" whose principal place of business is in the county where the proposed branch is to be located, or which is within 15 miles of the proposed branch. Further requirement is that the superintendent "shall" conduct such investigation as he deems necessary. It may be cursory if he so deems it, but he "shall" do it.

R. C. 1111.03 (C) says that, in considering an applica-

tion for a branch, the superintendent "shall ascertain" whether:

(1) The convenience and needs of the public will be served by the proposed branch;

(2) The population and economic characteristics of the area primarily to be served afford reasonable promise of adequate support for the proposed branch;

(3) The proposed branch meets such other reasonable criteria as he may require.

As if to forestall the possibility that these requirements be taken lightly, the legislature closes R. C. 1111.02, which deals with applications, as follows:

"(D) * * * Further, no such application shall be approved unless in conformity with section 1111.03 of the Revised Code."

The inescapable result of the legislative pronouncements noted is to bind together the interests of the applicant bank, the banks within the county, or within 15 miles, and the convenience and needs of the public to the business and economic future of the proposed branch. All are parties to the necessary "consent" of the superintendent, which is "specified" in the statutes. The legislature contemplated the possibility of adverse results from the granting of permission for a branch. The new branch might not get necessary support and fail; other existing banks might be hurt economically and, therefore, must be given notice of the pending application; and, the needs and convenience of the public might not be served by the proposed branch or they may already be adequately met.

In the composite legislative enactment, the applicant bank, the existing banks, and members of the general public are specified parties enjoying the possibility of being adversely affected. To consent or withhold consent to the establishment of a branch bank is an act of "adjudication" by the superintendent, in which he determines rights, privileges, and benefits of specified persons. As such, his decision is quasi-judicial in nature.

Court decisions, *Fortner, supra,* and others, speak of the administrative, or quasi-legislative, proceedings of ad-

ministrative officers and agencies, and of the quasi-judicial function, or proceedings of those same officers and agencies. Legal concepts are not always completely clear and adequate: thus, to dispose of a specific administrative proceeding categorically is sometimes difficult. Administrative duties or proceedings, sometimes referred to as ministerial functions, are least troublesome. The "quasi-legislative" duties are those assigned to an agency, which *Fortner* seems to identify as the rule-making processes, in which the courts may not participate and most assuredly will not interpret in the abstract, or in a vacuum as *Fortner* puts it. It would seem that such "quasi-legislative" duties should be subject to review in essentially the same manner as the acts of a legislature can be reviewed. Not in the abstract, of course, not by way of advisory opinion, but in determining whether a given act, legislative or quasi-legislative, as to a person affected, is unreasonable or unlawful.

Whether or not the decision in *Fortner* has limited, or nullified, possible appeals under R. C. 119.11, it appears to have added breadth and vitality to appeals under R. C. 119.12 by reference to that section in the opinion. Justice Herbert states at page 18: "* * * it seems logical that any *order* which effectuates or employs a rule * * * that is unreasonable or unlawful could not be an order 'in accordance with law' as that language appears in R. C. 119.12." (Emphasis added.) And, referring to that comment, Justice Duncan says, at page 21, that it "points out that quasi-judicial proceedings are open to attack under Section 119.-12, Revised Code."

Appellant, Clermont National Bank, has standing to appeal under R. C. 119.12. It is a person "specified" as a party in R. C. 1111.02 and 1111.03, and is, therefore, entitled to show, as a matter of fact, that it was adversely affected by the order of the superintendent. If Clermont can prove that it was in fact adversely affected, further support is provided for its claim of "standing" to appeal. There is logic to support the notion that standing can come solely from adverse effect. If the statutory language noted conferring "standing" needs support, it comes from

*Fortner* (by way of dictum) which says, at page 18, that any order that employs a rule, in this case supplied by statute, in a way that is unreasonable or unlawful, could not be in accordance with law under R. C. 119.12.

The order in the instant case is, it is further emphasized, quasi-judicial, being an "adjudication," and judicial decisions, in the Ohio concept, are subject to at least one appeal. A very broad view urges that whenever an administrative order adjudicates rights it should be subject to review.

Portions of our appeals statutes, R. C. 2505.01, etc., emphasize the necessity of review of judicial, and quasi-judicial decisions and lend support to the thesis just advanced. Note that basic philosophy reflected in the following portions of the appeals statutes:

*R. C. 2505.01—Definitions*

"(A) 'Appeal' means all proceedings whereby one court reviews or retries a cause determined by another court, an administrative officer, tribunal, or commission."

*R. C. 2505.02—Final order*

"* * * an order affecting a substantial right made in a special proceeding * * *"

*R. C. 2505.03—Final order may be appealed, exception*

"Every final order, judgment, or decree of a court and, when provided by law, the final order of any administrative officer, tribunal, or commission may be reviewed * * *"

The quasi-judicial decisions and orders of administrative officers and agencies require review, particularly because many of them arise out of regulations having the force of law and generally are ascribed to regularly enacted statutes or ordinances, passed by duly constituted legislative bodies. An example of such orders are those coming from zoning authorities which are predicated upon regulations adopted by an administrative or legislative body. Many orders result in injury—an injury to a private person, real or corporate. The still more difficult adjudication order, resulting in private injury, but justified in the light of public good, is common. It must not be

overlooked also that the continually increasing trend in government is government by administrative device, encompassing more and larger areas of economic and social life, and it has in it the dangers inherent in autocratic attitudes, human judgments, and the insidious possibility of the use of political and financial influence opposed to the public good. The imminency of such distortions of justice make an "adjudication," as some courts put it, "ripe" for review. An administrative order, "applied," not in a vacuum, may be unreasonable and unlawful, or the order resulting from an adjudication may not be supported by reliable, probative, and substantial evidence. Review is essential.

This court reviewed an appeal from a rule of the Ohio State Racing Commission in *Ohio Thoroughbred Racing Assn.* v. *Ohio State Racing Comm.* (1961), 114 Ohio App. 80. The court held the rule unreasonable and unlawful as to race track operators because it was found to make of the operators insurers against the "doping" or stimulation of horses. The appeal to the Common Pleas Court of this county was under R. C. 119.11, which the Supreme Court in *Fortner* suggests is the kind of appeal that should now be brought under R. C. 119.12. Certainly, the application of the racing commission rule is illustrative of those situations where an adversely affected specified person should be afforded an appeal.

Ohio decisions squarely confronting the "standing" of a party entitled to appeal are not available in abundance, and, with the seemingly broadened effect of *Fortner,* the questions presented by this appeal need more than cursory examination. Federal courts have given considerable attention to many of the problems here presented in a number of decisions necessary to interpret the federal Administrative Procedure Act. Those decisions deal only with appeals from the endless number of federal administrative agencies, but they do produce some policy attitudes and general rules significant in this present review.

Two 1970 United States Supreme Court decisions, which refer to many prior decisions of the court, are noted

104

particularly. One of the cases, *Association of Data Processing Service Organizations, Inc.* v. *Camp* (1970), 397 U. S. 150, 90 S. Ct. 827, deals with an order of the comptroller of the currency of the United States, supervisor of national banks, and the other, *Barlow* v. *Collins* (1970), 397 U. S. 159, 90 S. Ct. 832, is concerned with the provisions of the Food and Agriculture Act which provides for certain benefits to tenant farmers.

In *Data Processing* the court reviewed an order of the comptroller and held that the plaintiffs were competitors of national banks who offered data processing services and were, therefore, "aggrieved" under the Administrative Procedure Act and entitled to a judicial review. The decision has much to say about "standing," to appeal, and the somewhat synonymous term, "legal interest." At page 829 of 90 S. Ct. the court said: "Generalizations about standing to sue are largely worthless as such." Citing *Flast* v. *Cohen* (1968), 392 U. S. 83, the court emphasized the necessity of controversy, or dispute, as an ingredient in such a matter and quoted *Flast,* as follows:

"* * * dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."

The test of appealability, the court said, is "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise."

The language in the federal Administrative Procedure Act which was the center of interest for the court is as follows:

"* * * aggrieved by agency action within the meaning of a relevant statute."

The Ohio act does not contain this precise language, but, even so, Ohio statutes provide, or deny, standing. Statutory provision is, therefore, equally pertinent to our consideration. The importance of statutory provision is brought out in the court's elaboration of the "legal interest" test. At page 830 of 90 S. Ct. the court speaks as follows:

"* * * It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be

protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. * * *''

At page 831 of 90 S. Ct. the court notes a decision in *Abbott Laboratories* v. *Gardner* (1967), 387 U. S. 136, a federal food and drugs act case, in which it held a ''pre-enforcement'' judicial review was not prohibited under the food and drugs act. The generalization based on *Abbott* is as follows:

''There is no presumption against judicial review and in favor of administrative absolutism * * * unless that purpose is fairly discernible in the statutory scheme.''

*Barlow, supra,* involved, also, the question of ''standing.'' It was an action in which tenant farmers, recipients of benefits under the ''Upland Cotton Program,'' challenged an amendment to a regulation made by the Secretary of Agriculture. The Supreme Court held that the act establishing the program ''evinced Congressional intent that tenant farmers,'' alleging that they suffered injury in fact from the amended regulation, ''could have judicial review of the Secretary's action.'' The court said the farmers have the personal stake and interest that impart adverseness and are clearly within the zone of interest protected by the act (page 836).

The Supreme Court of Ohio, in a recent decision, *Ohio Power Co.* v. *Attica* (1970), 23 Ohio St. 2d 37, had something to say about ''standing.'' The Ohio Power Company filed an action for a declaratory judgment in the Common Pleas Court asking the court to declare certain ordinances of the Village of Attica null and void. The ordinances awarded certain franchise rights to the North Central Electric Cooperative, Inc., a competitor of Ohio Power.

Before considering the merits of the appeal, Justice Corrigan said that it was necessary first to ''determine whether the appellant, Ohio Power, has standing to prosecute the action.'' That question was resolved and the appeal decided on the merits. The court held Ohio Power did have ''standing.'' At page 38, the conclusion reads as follows:

''* * * Ohio Power, as a supplier of power to the

village under an existing franchise, has a vital interest. We conclude, therefore, that Ohio Power has standing, and proceed to the merits."

The attitude of the court toward appeal from, and judicial review of, administrative orders is reflected in several generalizations found in *Barlow,* as follows:

"* * * As we said in *Data Processing Service,* preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. * * *" (Page 837.)

"* * * Indeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated. * * *" (Page 838.)

The court said they held in *Abbott* that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." And, at page 838 of 90 S. Ct., the following was stated:

"* * * The right of judicial review is ordinarily inferred where congressional intent to protect the interests of the class of which the plaintiff is a member can be found; in such cases, unless members of the protected class may have judicial review the statutory objectives might not be realized. * * *"

Justices Brennan and White concur in the conclusion reached by the court in *Data Processing* and *Barlow.* They seem to draw some rather fine lines in their concurring opinion, but agree in substance with the opinion of the court. Speaking about the task of the court in which a regulation of an administrative officer or agency is challenged, they urge that before the court permits argument on the merits it must "canvass" the situation. At page 839, the two justices speak as follows:

"* * * But the canvass is made not to determine *standing* but to determine an aspect of *reviewability,* that is whether Congress meant to deny or to allow judicial review of the agency action at the instance of the plaintiff. * * *"

In their concurring opinion Justices Brennan and

White discuss "standing," "reviewability," and "merits."
As to standing, at page 840, they say:

"* * * standing exists when the plaintiff alleges, as
the plaintiffs in each of these cases alleged, that the challenged action has caused him injury in fact, economic or
otherwise. * * *"

As to reviewability, at page 841, the comment is:

"When the legality of administrative action is at issue, standing alone will not entitle the plaintiff to a decision on the merits. Pertinent statutory language, legislative history and public policy considerations must be examined to determine whether Congress precluded all judicial review, and, if not, whether Congress nevertheless
foreclosed review to the class to which the plaintiff belongs. * * *"

And, at page 842, the following appears:

"In the light of *Abbott Laboratories,* slight indicia
that the plaintiff's class is a beneficiary will suffice to support the inference."

Related to the comment on *Abbott* is footnote 9 on the
same page, as follows:

"This is particularly the case when the plaintiff is
the only party likely to challenge the action. Refusal to
allow him review would, in effect, commit the action wholly
to agency discretion, thus risking the frustration of the
statutory objectives."

After the "canvass" to determine standing and reviewability, "inquiry proceeds to the merits—to whether
the specific legal interest claimed by the plaintiff is protected by the statute and to whether the protested agency
action invaded that interest." Certain aspects of the merits may be touched in establishing standing and reviewability, but the identification of injury "in fact" is squarely
a burden upon the one who requests review.

R. C. 119.12, in applicable part, reads as follows:

"Any party adversely affected by any order of an
agency issued pursuant to any other adjudication may
appeal * * *."

Clermont is "any party," and it claims to be "ad-

versely affected," not by an adjudication as to a "license," but "any other adjudication." If the order is "unreasonable or unlawful" it cannot be an order "in accordance with law," and is appealable under R. C. 119.12, the Ohio Supreme Court suggests in *Fortner, supra.*

The United States Supreme Court decisions, *supra,* look to the legislation under which a plaintiff, or appellant, claims protection to see if Congress precluded all judicial review or precluded it as to the class the plaintiff, or appellant, belongs. In the *Papp* case, *supra,* R. C. 1711.10 gave the appellants leave to appear as "witnesses," and that only; nothing in the particular section, or in the entire chapter seems to afford *any* judicial review as to them.

R. C. 4303.26 moves in the direction of providing standing to protesters in the matter of the issuance of liquor permits. "Authorities," of churches, schools, etc., must have written notice of the pending application and must be afforded a hearing. If such be an approach to standing, the decided cases have trouble with the "adversely" affected concept which the federal courts see as associated with "standing." At least, legislative enactment has not encouraged the idea that such group has standing, although it is difficult to say that the legislature precluded all review or even as to the class to which the protesters belong.

The administrative act of the superintendent, the subject of this review, is governed by R. C. 1111.02 and 1111.03. Written notice is required to banks in the county of, and within 15 miles of, a proposed branch bank for which application has been made. R. C. 1111.03, then, provides that the superintendent "shall ascertain" (1) convenience and needs of the public, (2) population and economics of the area to see if they afford adequate support for the new branch, and (3) such other criteria the superintendent may require.

Notice alone certainly does not provide "standing" to appeal. But, R. C. 1111.02, the section providing for notice when an application for a branch is made, says that the

application shall not be approved unless it is in conformity with R. C. 1111.03. The social and economic importance of banks has long been recognized. This is reflected in the section calling attention to the convenience and needs of the public, the economic characteristics of the area, which must by reason of logical necessity include existing banks, which assuredly must be considered in connection with a determination of an available and "reasonable promise of adequate support" for the new branch.

The language of these sections noted does not specifically preclude all judicial review, nor does it appear reasonable to conclude that it precludes such review to the class to which this appellant belongs. In fact, the legislative pronouncement in these two sections makes it difficult to conclude that the legislature meant to preclude judicial review.

Banks were required to have notice. Banks are inextricably interwoven into the economic area in which the public seeks not only convenience and the meeting of its needs, but a bank with a "promise" of "adequate" support. Banks which fail scorch the good earth of the people and bring trouble and even chaos to all banks. The mere recognition of existing banks acknowledges that competition may not only destroy "adequate support," but likewise recognizes potential injury to, or failure of, the banks already there.

In the instant case, Clermont is not a mere "witness" or protester. Statutory enactment makes an existing bank an integrant part of the economic area in which a branch is proposed. It is a "party," a "specified person" as a named factor requiring consideration as a part of the areas which the legislature said the superintendent "shall" investigate.

The general rules announced by the United States Supreme Court in the decisions noted reflect a legal philosophy which is sound and necessary in this day of government by administrative officers and agencies. It is our considered opinion that they are appropriate for application in Ohio in providing the broader rights of appeal sug-

gested by *Fortner* relative to appeals under R. C. 119.12, and we so hold.

Clermont has "standing" to appeal under R. C. 119.12. A "canvass" by the Common Pleas Court is necessary to determine if that standing is further supported by proof of Clermont being adversely affected. If the court so finds, it shall proceed to the merits of the appeal, a determination whether the order of the superintendent is supported by reliable, probative, and substantial evidence, as required in R. C. 1111.03, and is according to law, that is, not unlawful or unreasonable.

The order of the Common Pleas Court is reversed and the cause remanded for further proceeding according to law and this decision.

*Judgment reversed.*

STERN, J., concurs.

HOLMES, J., dissenting. I reluctantly dissent from the opinion of the majority herein for a basic singular reason.

The appellant herein is invoking R. C. 119.12, a part of the Administrative Procedure Act, in prosecuting this appeal. Such section is applicable to appeals from adjudication orders as contrasted with appeals from rule making activities of administrative agencies.

Without determining whether or not the order of the superintendent of banks is an order of an "agency" within the purview of R. C. 119.12, I shall turn immediately to the question of whether the appellant may be considered a "party" thereunder, and as such have standing to appeal such order.

It is my opinion that the appellant is not a party adversely affected as provided for in such R. C. 119.12.

The word "party" is defined in R. C. 119.01 (G) as:

"* * * the person whose interests are the subject of an adjudication by an agency."

The subject of adjudication of this administrative body in the matter before this court was the granting of

consent by the superintendent of banks to the Citizens Bank to conduct a branch banking business.

The "specified person" of the "adjudication" was then the Citizens Bank, not the appellant, Clermont National Bank.

An affected or interested bank may not become a "party" by virtue of having been given notice under the requirements of R. C. 1111.02, nor by the fact that the superintendent of banks may have afforded a hearing on the question of establishing the branch bank. These actions on the part of the Superintendent do not constitute adversary proceedings.

The inability of a "person" rather than a "party" to appeal an adjudication order of an administrative agency seems to be well documented, *Harrison* v. *Public Utilities Commission,* 134 Ohio St. 346, being an example of such authority.

If the competitive aspects of branch banking are sufficiently significant to require those who would be damaged thereby to be heard, and parenthetically I believe in the significance of such, then amendments to our banking laws should be effected.

If it be desirable to afford affected banks, in an applicant branch bank area, standing to appeal the superintendent's orders in such proceedings, and parenthetically I believe it to be desirable, then such should be done by the legislature. Such involves a matter of policy determination and legislative action rather than judicial action.