THE STATE OF OHIO v. BUSER.

[Cite as State v. Buser (1970), 25 Ohio Misc. 179.]

(No. 40612—Decided July 30, 1970.)

IN RE CONTEMPT PROCEEDING: Common Pleas Court of Wood County.

*Mr. H. Richard Dunipace,* city solicitor, for plaintiff.
*Mr. Robert A. Burns,* for respondent.

HITCHCOCK, J. (by assignment from Paulding County.)
Defendant in the original cause as above captioned, initiated under No. 61629 in the Perrysburg Municipal Court, was, on March 3, 1970, arrested and charged with driving while under the influence of alcohol. On March 7, 1970, he obtained counsel, respondent in this proceeding, who will not be named in this opinion as the court is not at all certain that any discipline beyond that administered in this proceeding is warranted, or if warranted, that any punishment in excess of a private reprimand would be considered appropriate.

The evidence clearly indicates that the following proceedings were had in the Municipal Court: March 13, 1970, respondent, a member of the Bar of four years standing,

as attorney for defendant demanded a jury trial, whereupon trial date set for March 25, 1970, was changed to a pre-trial date. On March 22, 1970, there was a request to take the deposition of one Michael Brady. On March 25, 1970, there appeared in the Municipal Court before the Honorable Wayne M. Leatherman, Judge of said court, the defendant accompanied by respondent, as his counsel, defendant's wife, Virginia Buser, and his stepmother, Rose Buser, together with defendant's nephew, Michael Brady, who was a resident of Baton Rouge, Louisiana, visiting in Ohio, and considered to be an important witness for the defense.

At the pre-trial, Judge Leatherman, after questioning the city solicitor, respondent, defendant and his nephew determined that the cause could be tried to a jury on April 9, 1970. At this time the witness Brady informed the court that although he had intended to be already on his way back to Louisiana he could stay over April 9 and testify for his uncle at the trial. It was thereupon determined that it would not be necessary to take Mr. Brady's deposition and the matter was set for trial on April 9, 1970.

Immediately after the conference respondent filed a precipe for subpoena and caused a subpoena to be forthwith served on Michael Brady requiring his presence on April 9, 1970. Thereupon respondent told Brady in the presence of his relatives, to go on home to Louisiana because he was going to get a continuance and the case would not be tried until late summer or early fall; and that he, Brady, would have plenty of notice to enable him to return and testify. So the Busers went home and Michael Brady promptly returned to Louisiana.

Pursuant to the assignment a jury was summoned to appear in the Municipal Court on April 9, 1970. On April 8, 1970, respondent phoned Judge Leatherman and informed him that the witness, Michael Brady, was in the south and he was sure would not be able to be present on April 9, 1970, so the trial should be continued. Although Judge Leatherman was not satisfied wth respondent's explanation of how he knew Mr. Brady would not be present, the cause was continued, the jury call nullified.

Later in April, the city solicitor, respondent and Judge Leatherman agreed the cause could be tried to a jury on May 21, 1970, and the cause was reset for trial on that day. On some day probably between May 10 and May 14, 1970, respondent again called Judge Leatherman and requested a second continuance. Judge Leatherman denied the request. Michael Brady returned to the Perrysburg vicinity on May 18, 1970, and on May 21, 1970, testified for his uncle before the jury to which the DWI charge was submitted. The jury found defendant guilty as charged and was dismissed.

Shortly thereafter, Judge Leatherman summoned Michael Brady and inquired of him what excuse he had for not appearing on April 9, 1970, in response to his subpoena. Brady replied, "No excuse whatsoever." Thereupon Judge Leatherman found him in contempt and sentenced him to ten days in jail and to pay a $500 fine. Brady was forthwith committed to the Wood County Jail.

The next day Judge Leatherman received a telephone call from Virginia Buser, Michael's aunt, who in high dudgeon inquired why her innocent nephew should be put in jail. The judge explained and Mrs. Buser exclaimed, "That's not right, Judge. My husband's attorney told him to go back home to Louisiana because he was going to get the case continued and it wouldn't be tried until late summer or early fall."

Judge Leatherman invited Mrs. Virginia Buser to visit him which she did, bringing her husband's stepmother, Rose Buser, with her. Both were examined separately by Judge Leatherman who took their statements in narrative form. The Mesdames Buser after reading their statements in narrative form affixed their respective signatures and made oath that the statements were correct. Michael Brady was then summoned from jail and when questioned, specifically and under oath corroborated his aunt's testimony. Thereupon, Judge Leatherman vacated Michael Brady's contempt sentence, and released him from custody. Rose Buser had deposited cash bail for her stepson the defendant, and although she was present and paid little attention to the details of the case, she was certain re-

spondent said, "It will be late summer or early fall" before the case would be tried and he told me "he would try to get my bond released."

Thereupon, on May 27, 1970, Judge Leatherman entered the following order in the files of the original proceeding:

"This matter came on for hearing this May 27, 1970, on the oral motion of the court prosecutor for an order of this court to require John Doe, Esq., an officer of this court, to appear and show cause why he should not be held in contempt of this court regarding matters pertaining to the scheduling and trial of the within cause, and it appearing to the court that the same is well taken and should be sustained.

"It is ordered, adjudged, and decreed that the said John Doe, Esq., be and he hereby is ordered to appear in this court on Wednesday, June 3, 1970, at 1:30 o'clock p. m., to show cause why he should not be held in contempt of this court regarding matters pertaining to the scheduling and trial of the above captioned cause.

"The clerk of this court is ordered to cause the service of a copy of this journal entry on the said John Doe, Esq., and make return of the same according to law."

Counsel first appearing for respondent on June 1, 1970, executed an affidavit of prejudice against Judge Leatherman which was filed in the Perrysburg Municipal Court.

Thereupon Judge Leatherman notified the presiding judge of this court of this fact pursuant to the terms of R. C. 2937.20. The presiding judge, after consultation with all concerned approved an agreed order, filed June 19, 1970, and in pertinent part reading:

"It is ordered, adjudged, and decreed that the Court of Common Pleas of Wood County, Ohio, or an assigned judge thereof, hear, determine and adjudicate the questions raised by the filing of the order of the Honorable Judge Wayne M. Leatherman, requiring John Doe, Esq., to show cause why he should not be held in contempt of the Perrysburg Municipal Court, Wood County, Ohio, at a date and time to be fixed by the court."

On July 27, 1970, the court, with respondent present and represented by different counsel, heard the testimony of Judge Leatherman, Virginia Buser, and Rose Buser, and adjourned the matter to July 30, 1970, at which time the prosecution rested and respondent offered no evidence.

Respondent made this statement:

"* * * on March 25th, when I conferred with Victor Buser and Michael Brady outside of the office of the Clerk of Courts in Perrysburg, my only interest was in properly defending my client Victor Buser. When it became known to me sometime previous and at that time that Michael Brady, the witness, wished to return home for some personal problem, I advised him that the subpoena required his attendance, but he could return home in the meantime. I made the statement to him that in effect he was an extremely important witness; and that I would continue the case until late summer or early fall if necesasry to secure his presence as his attendance was that necessary. The statement may have been interpreted by those present to mean that he didn't have to return on April 9.

"I clearly didn't intend such an interpretation. I did not in any way intend my statement to be contemptuous of Perrysburg Municipal Court or Judge Leatherman, both of whom I have always held in the highest regard. Recognizing that such a statement may appear to be improper I apologize again to Judge Leatherman and to his Court for making the statement or any inconvenience it has clearly caused the Perrysburg Court and the Wood County Common Pleas Court. I submit that my intentions or my handling of this matter was honorable at all times. Thank you."

Thereupon the court found respondent guilty of contempt as charged, contrary to that part of R. C. 2705.02, reading "'A person guilty of any of the following acts may be punished as for a contempt"
"'* * *

"(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;"

The court then continued the matter for six months for sentencing, decreeing that if during that time respond-

ent enroll in, attend, and attain a passing grade in one of the two-hour legal ethics courses given during its next term by the Law School of the University of Toledo and also attend one of the Institutes for Continuing Legal Education conducted by the Ohio Legal Center Institute, P. O. Box 8220, Columbus, Ohio 43201, and show proof of the same to the court, he shall be held to have fully purged himself of contempt herein, except for the costs, which are adjudged against him in any event. Hopefully respondent will take advantage of this opportunity to purge himself of contempt and will emerge from this experience a wiser, better, and nobler lawyer.

This court cannot, as a general rule, approve, condone or overlook in members of the Bar the type of conduct of which respondent has been found to have committed here, even though the court has met very few magistrates so unreasonable, overbearing, dictatorial, and capriciously arbitrary, that in certain circumstances (not a breath of which is here in anyway suggested) this court might be unable to find such conduct dishonorable in history's great mural of men's struggle for justice.

Moreover, this court believes it would be naive in the extreme to believe that conduct like or similar to that of respondent here does not all too often occur in most courts of our nation; even though perhaps infrequently when the total number of all cases is considered. Respondent's misconduct came to light and was clearly established only by reason of the peculiar facts of this case.

The court has prepared this memorandum of opinion not alone to give notice to the profession of this case but to alert the profession, in the light of the facts of this case, to Rule No. 11 of the Ohio Rules of Civil Procedure (and particularly the fourth sentence thereof) effective July 1, 1970, which reads:

"* * * *The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.* * * *"

If we trial judges firmly insist that every member

of the Bar observe and adhere to this requirement in substantial and bona fide compliance, I must suspect it will make a greater contribution to a generally more satisfactory administration of justice in Ohio than the rest of the new rules together.