**ZELNICK**

v.

**TROY CITY COUNCIL et al.**

Court of Common Pleas of Ohio,
Miami County.

No. 96–369.

Decided Jan. 31, 1997.

68

*Don Brezine,* for plaintiff.

*W. McGregor Dixon, Jr.,* for defendant Troy City Council.

*Michael A. Staudt* and *Daniel J. Gentry,* for defendant Kensington Land Company.

JEFFREY M. WELBAUM, Judge.

This matter came on for the court's consideration on motion of intervening defendant-appellee Kensington Land Company ("Kensington") filed December 23, 1996, to dismiss the above captioned administrative appeal of plaintiff-appellant Peter Zelnick for lack of standing. Zelnick filed his brief and representations of fact pertaining to standing on December 16, 1996. Defendant-appellee Council of the City of Troy ("Troy") filed its memorandum in opposition to Zelnick's filing on December 23, 1996.

On October 31, 1996, the court held a scheduling conference as indicated by its order filed that day. Plaintiff was represented by attorney Don Brezine and Troy was represented by W. McGregor Dixon, Jr. The contents of the order were the result of an agreement between the parties to coordinate scheduling and the manner in which the case would proceed. It was anticipated that the facts relating to standing might be stipulated. In the event that stipulation of facts relating to standing was not made, the parties were free to request an evidentiary hearing on the issue prior to, with, or within their memoranda. Although most of the peripheral facts appear to be uncontested, the court has not been made aware of any stipulations of fact. No evidentiary hearing was requested. Therefore, the court relies solely on the materials submitted by the parties.

This appeal concerns the adoption of an ordinance accepting Section One of the final plat of Kensington Subdivision. This action was taken by Troy on October 12, 1996 at a public meeting as Ordinance No. 0–44–96. Unfortunately, there is no complete recording or transcript of the meeting. The parties have submitted a copy of the minutes, which includes the sworn addendum submitted to Troy by Zelnick.

The final plat was accepted after its first reading, the rule requiring three readings having been suspended by vote of the council. Zelnick was present at the meeting. He was not represented by an attorney. After the measure had been passed and toward the end of the meeting, audience comments were permitted. According to the minutes, Zelnick made several comments, observations, objections, and allegations relating to the legal procedures employed by Troy, designs of the plat, and potential harm to his land. His residence and land are located outside the municipality approximately one thousand feet southwest of the property at issue, although he has a Troy mailing address.

To establish standing here, Zelnick relies on the allegations involving two forms of particularized harm which he stated at the meeting. First, he alleges the likelihood of harm to the recharging of well water in the area. Second, Zelnick alleges the likely disruption of the drainage ditch systems in the area. On the latter topic, he offered no basis for his conclusion other than some drainage ditch maps of areas that do not appear to relate directly to his land without further explanation or clarification.

Zelnick invites the court to infer the establishment of his allegation concerning recharging of well water from his representation that six wells in his area have gone dry in the last year. Also, in support of his allegation he offers the sworn addendum to the minutes signed by himself and two others. They represent that they heard the acting city engineer, Steve Leffel, give his opinion at the meeting that the development would not affect the city of Troy wells, that only the wells in the surrounding area would be affected. In rebuttal, Kensington submitted the affidavit of Leffel denying that he had made the statement. The Leffel affidavit represents that the development should not have any adverse impact on the local wells because the development will use city utilities and additional local wells will be prohibited within the development. The Leffel affidavit further represents that the recharging of well water may actually be improved by the development due to the presence of sodded lots within it versus farm fields. The minutes indicate that attorney Mike Staudt, representing Kensington, stated during this portion of the meeting that the ratio of wells gone dry in this area is consistent with the ratio of wells gone dry in Miami County as a whole.

The court finds as a preliminary matter that it has subject matter jurisdiction to decide these issues under R.C. Chapter 2506. The action of Troy in adopting Ordinance No. 0–44–96 on October 21, 1996 is administrative action as contrasted with legislative action, which is appealed by referendum. The action was the accepting of the final plat of previously zoned property pursuant to an existing zoning regulation. It is administrative in nature because the action involved executing or administering an existing law rather than an amendment or enactment of a new one. *State ex. rel. Srovnal v. Linton* (1976), 46 Ohio St.2d

207, 75 O.O.2d 241, 346 N.E.2d 764, *Myers v. Schiering* (1971), 27 Ohio St.2d 11, 56 O.O.2d 6, 271 N.E.2d 864, · The failure or refusal of a municipality to approve a plan for the resubdivision of land that met a zoning ordinance already in effect has been held to be an administrative act, and as such is appealable under R.C. Chapter 2506. *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph three of the syllabus; *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 362, 15 OBR 480, 482–483, 474 N.E.2d 303, 305–306, *Trafalgar Corp. v. Bd. of Miami Cty. Commrs.*, Miami C.P. No. 96–135, unreported.

 The right to appeal the action or determination of an administrative body is neither inherent nor inalienable. At common law the right to appeal can be exercised only by those parties who are able to demonstrate a present interest in the subject matter that has been prejudiced by the action of the body from which the appeal is taken. The right to appeal must be derived from a constitutional or statutory right. *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 591 N.E.2d 1203, *In re Annexation in Mad River Twp.* (1970), 25 Ohio Misc. 175, 54 O.O.2d 215, 266 N.E.2d 864, The burden is on the appellant to establish standing for appeal. *In re Appeal of Jefferson Twp. Bd. of Trustees* (1992), 78 Ohio App.3d 493, 500, 605 N.E.2d 435, 440, *Clermont Natl. Bank v. Edwards* (1970), 27 Ohio App.2d 91, 108, 56 O.O.2d 268, 277–278, 273 N.E.2d 783, 793.

 The applicable statute governing the right to appeal in this case is R.C. 2506.01. This limits administrative appeals under that chapter to decisions that determine "rights, duties, privileges, benefits, or legal relationships of a person." Interpretations of this statute as it relates to standing and the general body of administrative law on the subject require the court to focus on whether Zelnick's property rights are "directly affected" by the administrative order appealed from.

The earliest Ohio Supreme Court opinion interpreting this issue under R.C. 2506.01 is *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591. In this vintage opinion the court found noteworthy the status of the appellant, whether he was represented by legal counsel, the nature of the administrative body, the tenor of the meeting or hearing, the nature of the appellant's participation therein, the type of administrative action taken, and the apparent nature of the prejudice. Roper and his attorney appeared before the township zoning board to voice opposition to the granting of a variance that would change restrictions on fifty acres of a residential zoning district to permit the construction of a commercial oil distribution center. They not only protested the granting of the variance; on the record they vowed to appeal if the board granted it. The court noted that the meeting was attended by a large, unruly crowd that was boisterous and sometimes out of

control. Roper and his attorney verbally jousted with the applicant for the variance and his attorney throughout the meeting. At 173 Ohio St. at 173, 18 O.O.2d at 440, 180 N.E.2d at 595 the court found that "the action of Roper was tantamount to making him a party."

Although we know that Roper was an elector, resident, and landowner of the township, the opinion was silent as to the proximity of his land to the property of the proposed variance or whether Roper was adversely affected by some special harm as is defined in later cases. In light of the Supreme Court and appellate cases that redefine the factors set forth in *Roper*, the court limits the precedential value of *Roper* to its facts. The court finds the later cases, which also require a demonstration that the appellant is adversely affected, more compelling.

For example, in *Schomaeker v. First Natl. Bank* (1981), 66 Ohio St.2d 304, 311–312, 20 O.O.3d 285, 289–290, 421 N.E.2d 530, 537, the Ohio Supreme Court clarified its decision in *Roper*. The court stated:

"In order to bring a R.C. Chapter 2506 direct appeal of an administrative order, plaintiff must be a person directly affected by the decision of the planning commission. Since the order affected and determined plaintiff's rights as a property owner, and she had previously indicated her interest, both by a prior challenge to the grant of a certificate of occupancy and by her presence with counsel at the hearing on the variance, plaintiff is properly within that class of persons with standing to bring a direct appeal pursuant to R.C. Chapter 2506."

The Lake County Court of Appeals has interpreted this language in *Schomaeker* to mean that an adjacent or contiguous property owner must be "directly affected" by the decision of the administrative agency and must actively participate in the administrative proceedings in order to have standing to appeal the administrative decision. *Route 20 Bowling Alley, Inc. v. Mentor* (Dec. 22, 1995), Lake App. No. 94–L–141, unreported, 1995 WL 869959, at 7. Mere participation in the hearing process without a showing of adverse effect is not enough to establish the right to bring an appeal.

The court finds that Zelnick did participate in the administrative proceedings. The next inquiry is whether he has sufficiently articulated and demonstrated that he is a directly affected party. In *Schomaeker*, a contiguous property owner and resident elector appeared with legal counsel at the public hearings and protested the proposed action, which was ultimately appealed. The court held that the appellant was directly affected by the action. To illustrate the other extreme is *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 27, 591 N.E.2d 1203, 1205, There, the court stated:

"[A] private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack

standing because his injury does not differ from that suffered by the community at large."

From these cases the difference between an appeal by a contiguous landowner who is a resident elector and one by an owner of property across town is clearly defined. In the more treacherous middle ground the court must "look beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." *Westgate Shopping Village v. Toledo* (1994), 93 Ohio App.3d 507, 513, 639 N.E.2d 126, 130; *Am. Aggregates Corp. v. Columbus* (1990), 66 Ohio App.3d 318, 322, 584 N.E.2d 26, 29.

Kensington cites *Am. Aggregates Corp.* in support of its position. Although that case shares these issues of standing and the subject of water as common threads, the case is not helpful to defendants. In *Am. Aggregates,* the alleged harm was the allegation of contamination of the city water supply. The court held that the appellant did not demonstrate that it was likely to suffer particularized harm. Rather, the court found that appellant's allegation constituted a generalized grievance shared in substantially equal measure by all city residents. Therefore, that appellant did not demonstrate that it was adversely affected.

Conversely, here Zelnick alleges the possibility of adverse effect on water wells and drainage ditch systems in the area of his land. These allegations support the first of two requirements that Zelnick must establish to demonstrate standing.

There are two components generally embodied in the concept of standing to appeal an administrative decision. In order to have the right to appeal this case, Zelnick must satisfy his burden regarding both topical standing and reviewability. These components are usually synonymous and treated together under the topic of standing, but are separated here for clarification.

In order to satisfy his burden of proof, Zelnick must first articulate topical standing, that is, he must offer factual allegations describing the adverse effect of the administrative action upon him. This he has done. Next, he must demonstrate reviewability. Reviewability is a more formidable requirement. He must prove facts which establish that he will likely suffer the special harm alleged. To establish topical standing and reviewability Zelnick must allege and establish by proof that he falls within the class of protected persons entitled to appeal the administrative decision. *Clermont Natl. Bank v. Edwards, supra,* 27 Ohio App.2d at 108, 56 O.O.2d at 277–278, 273 N.E.2d at 793.

Although topical standing is adequately alleged, Zelnick offers no sufficient evidentiary basis to support his conclusory allegations. "Certain aspects of the merits may be touched in establishing standing and reviewability, but the identification of injury 'in fact' is squarely a burden upon the one who requests a

review." *Id.* In *Clermont*, 27 Ohio App.2d at 110, 56 O.O.2d at 278–279, 273 N.E.2d at 794, the appellate court found that the appellant had established topical standing by articulation of allegations constituting special harm. However, the court remanded the case to the trial court to determine if standing was supported by proof of the appellant's being adversely affected. The appellate court ordered the lower court to decide the appeal on the merits only in the event that the appellant proved reviewability by demonstrating that he was adversely affected.

The appellant's evidentiary burden on the issue of reviewability has also been expressed in other ways. At common law it is the burden of the appellant to show a present interest in the subject matter that has been prejudiced. *Willoughby Hills v. C.C. Bar's Sahara, Inc., supra.* For example, testimony by expert witnesses that the value of the appellant's noncontiguous property would be reduced by the enactment of a zoning ordinance will support a finding that an appellant was directly affected by the zoning ordinance. *Westgate Shopping Village v. Toledo, supra; Stoll v. Gulf Oil Corp.* (C.P. 1958), 79 Ohio Law Abs. 145, 155 N.E.2d 83. This is the form of "concrete adverse impact" that must be demonstrated by Zelnick in order to establish his right to appeal the administrative action. *In re Appeal of Jefferson Twp. Bd. of Trustees*, 78 Ohio App.3d at 500, 605 N.E.2d at 439–440.

In most cases the facts supporting topical standing are stipulated or uncontested. In those cases the trial court applies the law to the agreed facts. Here, the parties did not stipulate that the recharging of well water on Zelnick's land would be adversely affected by the subdivision, nor was it conceded that the drainage ditch system would likely be disrupted by the subdivision. These matters are contested.

Here, Zelnick alleges harm but does not demonstrate it as required by his burden of proof. Even if one accepts the premise that water recharging of well is a problem in Zelnick's area, that does not establish that the Kensington Subdivision will make it worse. Kensington submitted equally compelling evidence by way of the Leffel affidavit that there would be no adverse effect on the well water recharging in the area.

On the issue of Leffel's alleged admissions that the subdivision would adversely affect the recharging of well water in the area of Zelnick's land, the court is left with only conflicting affidavits to examine. No evidentiary hearing to present proof on these issues was requested. The quality of the evidence presented by Zelnick concerning what Leffel said is at best equally balanced with that offered by defendants.

The evidence Zelnick specifies in support of adverse effect is too uncertain, speculative, and vague to support a conclusion that he will be harmed by the

administrative action which he seeks to appeal. His claims are without sufficient specified evidentiary underpinnings. Where the evidence is equally balanced, allocation of the burden of proof on the issue is determinative of the outcome. Zelnick has the burden of proof to establish standing. Accordingly, the defendants must prevail.

The court, being well advised in the matter, finds that plaintiff has not satisfied his burden to demonstrate that he is entitled to appeal the administrative action of Troy in adopting Ordinance No. 0–44–96 on October 21, 1996. Accordingly, the court finds that the motion of Kensington to dismiss is well taken, and the court hereby grants it.

*Cause dismissed.*