GENOA BANKING COMPANY, APPELLANT, *v.*
MILLS, SUPT., APPELLEE.

[Cite as Genoa Banking Co. v. Mills (1981), 67 Ohio St. 2d 106.]

(No. 80-1486—Decided July 8, 1981.)

*Mr. Douglas V. Austin, Messrs. Baker & Hostetler* and
*Mr. Richard Hollington,* for appellant.

*Mr. William J. Brown,* attorney general, *Ms. Nancy A. Williams, Mr. Roger Sugarman* and *Mr. Thomas Palmer,* for appellee.

CLIFFORD F. BROWN, J.   The initial question before this court is whether R. C. Chapter 119, the Administrative Procedure Act, may be invoked to appeal the establishment of a bank branch. Under R. C. 1111.02, no bank branch may be established without the prior approval of that branch by the Superintendent of Banks. The second question to be decided is whether a bank operating in the community for which the branch in question was approved is a proper party to pursue such an appeal

R. C. 119.12 controls the right to appeal administrative adjudications.[1] The second paragraph of that section gives a right to appeal "any order" to the Franklin County common pleas court other than orders which, *inter alia,* either deny admission to an examination or deny an applicant his request for a license. By framing the right in terms allowing the appeal of "any order," the General Assmebly evidenced an intent to grant an extensive right of review under R. C. 119.12.

However, the action appealed from must be an order of an "agency," as that term is defined in R. C. 119.01(A).[2] While

---

[1] R. C. 119.12 provides, in pertinent part:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication denying an applicant admission to an examination, or denying the issuance or renewal of a license, registration of a licensee, or revoking or suspending a license, may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident * * *.

"Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin County * * *."

[2] R. C. 119.01 provides, in pertinent part:

"As used in sections 119.01 to 119.13 of the Revised Code:

"(A) 'Agency' means, except as limited by this division, any official, board, or commission having authority to promulgate rules or make adjudications in the bureau of employment services, the civil service commission, the department of industrial relations, the department of liquor control, the department of taxation, the department of tax equalization, the industrial commission, the bureau of workers' compensation, the functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code, and the licensing functions of any administrative or executive officer, department, division, bureau, board, or commission

the Superintendent of Banks is not one of the enumerated authorities specifically made subject to appeals under R. C. Chapter 119, an appeal may be taken under R. C. 119.12 from an order of any state authority which constitutes an exercise of its "licensing functions." Therefore, the basic issue to be decided is whether the approval of a bank branch by the Superintendent of Banks is an exercise of the "licensing function" so as to make this an appealable order of an "agency."

An examination of the language in R. C. Chapter 1111 fails to disclose any mention of the terms "license," "permit," "certificate," "commission" or "charter."[3] Rather, R. C. 1111.02(E) refers to "approval" or "disapproval," and R. C. 1111.03 to "the consent of the superintendent of banks." The use of these terms caused the lower courts to conclude that the order involved here was not an exercise of the "licensing function." Certainly, if the General Assembly had failed to elaborate on what the process for "approval" or "consent" should be, we would agree that no "license" by an "agency" was contemplated. *Home Sav. & Loan Assn.* v. *Boesch* (1975), 41 Ohio St. 2d 115.

However, the General Assembly has detailed the procedure necessary for the establishment of a bank branch. R. C. 1111.02(A) sets forth the procedure for submitting an application for a branch bank.[4] Division (B) of that section requires notice to be given to interested parties and a thorough investigation by the superintendent.[5] Division (C) requires the

---

of the government of the state having the authority or responsibility of issuing, suspending, revoking, or canceling licenses.***"

[3] R. C. 119.01(B) provides, in part:

"(B) 'License' means any license, permit, certificate, commission, or charter issued by the agency."

[4] R. C. 1111.02(A) provides:

"A bank desiring to establish a branch, relocate an existing branch, or relocate its principal place of business within the particular municipal corporation, township, or county designated in its articles of incorporation, shall submit an application therefor to the superintendent of banks."

[5] R. C. 1111.02(B) provides:

"Upon receipt of an application under division (A) of this section, the superintendent shall give written notice of its filing to each other bank whose principal place of business is located in the county where the proposed branch is to be located or within fifteen miles of the proposed branch. The bank shall, at or before the time of forward-

superintendent to issue preliminary findings and a summary of the information submitted by the applicant relating to its lending record.[6] Division (D) requires that the superintendent hold a public hearing whenever "any person" timely files written objection to the application, and allows "any person" to present testimony at such hearing.[7] Division (E) mandates action by the superintendent "as promptly as possible," and in any event, within 90 days following filing of the application, unless the applicant consents in writing to an extension of time.[8] Divisions (F), (G), and (H) set out specific quantitative

ing an application under division (A) of this section to the superintendent, cause notice of its filing to be published in a newspaper of general circulation in the county where the proposed branch or relocated principal office is to be located and in the county where the bank maintains its principal place of business. Such notice shall be published once a week for two weeks following the filing of such application. The superintendent shall conduct a thorough investigation."

[6] R. C. 1111.02(C) provides:

"Prior to the date upon which a public hearing may be held pursuant to division (D) of this section, the superintendent shall:

"(1) Issue his preliminary findings with respect to whether the applicant has met the criteria set forth in division (C) of section 1111.03 of the Revised Code;

"(2) Prepare a summary of the information submitted by an applicant to the superintendent in connection with the superintendent's investigation relative to whether the applicant has met the criteria set forth in divisions (C)(3) and (4) of section 1111.03 of the Revised Code. The information upon which the summary is based shall relate to the applicant's lending practices and shall be submitted to the superintendent in a form as prescribed by the superintendent. The superintendent shall make the summary available for inspection by any person at the offices of the division of banks in Columbus. The summary shall not contain any information that identifies an applicant for a loan."

[7] R. C. 1111.02(D) provides:

"The superintendent shall hold public hearings before the division or the banking board, whenever he receives from any person, no later than thirty days after the last day of publication as provided in division (B) of this section, a written objection to the superintendent's preliminary findings issued pursuant to division (C) of this section. Any person, including the attorney general, on behalf of the public, may present testimony at such hearings."

[8] R. C. 1111.02(E) provides:

"The superintendent shall act upon all applications for establishment or relocation of a branch or relocation of a principal place of business within the particular municipal corporation, township, or county designated in its articles of incorporation as promptly as possible. The superintendent shall approve or disapprove any such application within ninety days following the date upon which it is filed unless the time is extended with the written consent of the applicant.

"For the purpose of this section an application shall not be deemed filed unless accompanied by the filing fee required by section 1125.16 of the Revised Code."

and qualitative considerations the superintendent is required to address, referring, *inter alia,* to R. C. 1111.03.[9]

Clearly, the thrust of R. C. 1111.02 and 1111.03 is to guarantee a full and fair adjudication of rights and interests before any bank branch can be established. This court long ago defined "license" as "permission granted by some competent authority to do an act which, without such permission, would be illegal." *State* v. *Hipp* (1882), 38 Ohio St. 199, paragraph two of the syllabus.

---

[9] R. C. 1111.02(F), (G), and (H) provide:

"(F) No application for approval of the establishment of a branch shall be approved by the superintendent unless the minimum capital, surplus, and undivided profits requirement specified in section 1105.02 of the Revised Code, has been met. Further, no such application shall be approved unless in conformity with section 1111.03 of the Revised Code.

"(G) No application for the establishment of a branch shall be approved by the superintendent if the superintendent determines that such approval would cause the applicant bank to control aggregate total deposits of banks in this state exceeding twenty per cent of the total deposits held by all banks located in this state.

"(H) No application for the relocation of a principal place of business shall be approved by the superintendent if the superintendent determines that the sole purpose of the relocation is to establish and maintain a branch."

R. C. 1111.03(C) provides:

"In considering an application for a branch under division (A) of this section, the superintendent shall ascertain whether:

"(1) The convenience and needs of the public will be served by the proposed branch;

"(2) The population and economic characteristics of the area primarily to be served afford reasonable promise of adequate support of the proposed branch;

"(3) The applicants' lending record meets the credit needs of its entire community, including low-and-moderate income neighborhoods, consistent with both the safe and sound operation of such applicant and the 'Community Reinvestment Act of 1977,' 91 Stat. 1147, 12 U.S.C. 2901, as amended, and the rules and regulations promulgated thereunder;

"(4) With respect to loans for the acquisition, construction, rehabilitation, repair, or maintenance of housing in its entire community, including low-and-moderate income neighborhoods, the applicant has neither denied such loans nor varied the amounts, rates, terms, or conditions of such loans, on the basis of the neighborhood location or age of the security for such loans, or the applicant has justified any such denial or variance on the basis that it was necessary to avoid unsound banking practice;

"(5) The applicant intends that the primary purpose of the establishment of the branch is to meet the credit needs of the local community where the branch is proposed to be established, consistent with sound banking principles;

"(6) The proposed branch meets such other reasonable criteria as he may require."

Despite the absence of the specific term "licensee" or its equivalent in R. C. Chapter 1111, the action of the superintendent approving a bank branch constitutes an "exercise of the licensing function." Any other interpretation, given the elaborate substantive considerations and procedural rights spelled out in the statute, would sacrifice substance for form. *Clermont National Bank* v. *Edwards* (1970), 27 Ohio App. 2d 91. By establishing such specific criteria for approval of bank branches, the General Assembly implied a right to judicial review of the decision making process. Otherwise, there could be no assurance it was accomplished in a proper manner.

However, we need not rely on any implied right to review of the superintendent's decisions. The original statutory language providing for approval of bank branch applications included a right to appeal from disapprovals of such applications.[10] This appeal provision was eliminated by the 1953 code revision at the same time changes were made to the Administrative Procedure Act excluding certain activities of the Superintendent of Banks from the definition of "agency." None of these excluded acts involved approval of bank branches. See footnote 2, *supra.*

By failing to include this function in the list of excluded activities, the General Assembly intended both to preserve the right to appeal disapprovals of bank branch applications, and to enlarge that right to include all the procedural safeguards of a R. C. Chapter 119 appeal. Such a right necessarily includes approvals of bank branch applications.

Therefore, the action of the Superintendent of Banks approving or disapproving a branch bank application is an exercise of the licensing function by an agency, entitling "any party adversely affected" by the action to appeal pursuant to R. C. 119.12. The General Assembly intended this quasi-judicial act to be subject to review. *Fortner* v. *Thomas* (1970),

---

[10] G.C. 710-73, provided, in relevant part:

"***No branch shall be established until the consent and the approval of the superintendent of banks has been first obtained,***[and i]f such consent and approval is refused, an appeal may be taken therefrom in the same manner as is provided in section 45 of this act."

Section 45 provided a right to appeal to a board composed of the Governor, Superintendent of Banks and the Attorney General, the decision of such board being final.

22 Ohio St. 2d 13, paragraph one of the syllabus. The reviewing court must decide whether the order is supported by reliable, probative and substantial evidence, and is in accordance with law. *Ohio Real Estate Comm.* v. *Cohen* (1962), 90 Ohio Law Abs. 137.

Having concluded that appeal is appropriate under R. C. Chapter 119, we next consider whether appellant is a proper party to pursue such an appeal. R. C. 119.12 provides for appeal by "[a]ny party adversely affected" by an order of an agency issued pursuant to its licensing function. Appellant received notice of this branch application pursuant to R. C. 1111.02, filed objections to the superintendent's findings, participated in a hearing on the matter, and was adversely affected by the superintendent's approval of the application. The interests of appellant are bound together intimately with those of the applicant bank, such that the General Assembly saw fit to grant an absolute right to participate in the licensing process to all banks located within the county, or within 15 miles, of the proposed branch.

R. C. 119.01(G) defines "party" as "the person whose interests are the subject of an adjudication by an agency." Appellee urges that use of the term "party," as opposed to "person," adversely affected, denies appellant standing to appeal. This court will not infer an illogical definition of "party" in this context. Certainly, if the only person entitled to appeal the approval of a bank branch is the bank granted the right, then no effective review exists. We will not lightly infer preclusion of judicial review of an administrative action. *Barlow* v. *Collins* (1970), 397 U. S. 159, 166.

Accordingly, we hold that appellant was a "party adversely affected" by the superintendent's decision, and entitled to appeal that decision. The judgment of the Court of Appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed and*
*cause remanded.*

P. Brown and Sweeney, JJ., concur.

Holmes, J., concurs in the syllabus and judgment.

Celebrezze, C. J., W. Brown and Locher, JJ., dissent.

HOLMES, J., concurring in the syllabus and the judgment.

Counsel for appellee has appropriately pointed out my dissent in *Clermont National Bank* v. *Edwards* (1970), 27 Ohio App. 2d 91, 110. I dissented upon the basis that within the context of the legislative scheme in effect at that time for the establishment of branch banks, no right of hearing was afforded objecting established banks in the area. It was, therefore, my conclusion that an objecting bank would not qualify as a "party" under the Administrative Procedure Act, even though I would have conceded that such an objecting bank may have been adversely affected.

However, in 1979, amendments were made to the chapter of law relating to bank branching, the most important of which, for purposes of this discussion, were the amendments to R. C. 1111.02 which now, under subsection (D) thereof, the Superintendent of Banks is mandated to hold public hearings whenever he receives from any person, including of course any established banks in the area, a written objection to the superintendent's preliminary findings issued pursuant to the section.

My concurrence, here, is not upon the basis that the appellant's counsel has convinced me of the error of my ways as espoused in *Clermont,* but is based upon my view that the General Assembly has in essence done that which I suggested in *Clermont* in order to render the objecting bank a "party" for purposes of appeal.

What with the ever-growing banking industry within this state, and the laws enacted permitting statewide branching of banks, the General Assembly has recognized the desire, if not the right, of established banks in the area to be heard on the question of the determinations of the Superintendent of Banks concerning branches to be located in their areas.

These changes in the laws affecting both the allowance of increased branching and the associated rights of existing banks to be heard on such determinations, have now provided to me the missing link to establish the "party" status of the objecting bank, within the meaning of an R. C. Chapter 119 appeal.

Therefore, I concur in the syllabus and the judgment herein.

CELEBREZZE, C. J., dissenting. I respectfully dissent from the majority opinion and would affirm the judgment of the Court of Appeals.

R. C. 119.01(B) defines license in the following manner:

" 'License' means any license, permit, certificate, commission, or charter issued by any agency.***"

Conspicuous by its absence from R. C. Chapter 1111 is any use of the words license, permit, certificate, commission, or charter.

In *Home Sav. & Loan Assn.* v. *Boesch* (1975), 41 Ohio St. 2d 115, 119, a case dealing with an application for a building and loan association branch office, this court unanimously made the distinction between (1) licensing a building and loan association to *commence* business, and (2) allowing a building and loan association to *expand* its business by opening a branch office. As the court specifically ruled, at page 119:

"The superintendent performs a licensing function when he certifies that a building and loan association may commence doing business pursuant to R. C. 1151.03. When he allows an application for a branch office, pursuant to R. C. 1151.05, he allows the association to expand that business in a specific location and no licensing function is involved. The right to commence operations is the subject of the licensing function, and whether the association may operate a branch is ancillary to that right."

I submit that the similarity of the case at bar to *Home Sav. & Loan Assn.* v. *Boesch, supra,* requires us to apply, in this instance, the *Boesch* rationale. Applying the *Boesch* ruling to the facts *sub judice* leads to the conclusion that the already-licensed Bank of Elmore Company, in seeking permission to expand by opening a branch office, is not attempting to secure another license. Therefore, since appellant is attempting to challenge a non-licensing action of the Superintendent of Banks, it has no statutory foundation upon which to construct an appeal.

Accordingly, I believe that both the trial and appellate courts correctly concluded that appellant's cause was not an appeal of a licensing function.

W. BROWN and LOCHER, JJ., concur in the foregoing dissenting opinion.