RINGS, APPELLANT, *v.* NICHOLS, DIR., ET AL., APPELLEES.

SOUTHWEST JACKSON TOWNSHIP CIVIC ASSOCIATION, APPELLANT, *v.* NICHOLS, DIR., ET AL., APPELLEES.

258

(Nos. 83AP-54 and -55—Decided
October 27, 1983.)

*Messrs. Jones, Day, Reavis & Pogue,*
*Mr. John W. Zeiger, Mr. Mark S. Coco*
and *Mr. Todd S. Swatsler,* for appellants.
*Mr. Anthony J. Celebrezze, Jr.,* attor-
ney general, and *Mr. Martin H. Lewis,*
for appellee Director of Ohio Environ-
mental Protection Agency.
*Mr. John S. Zonak,* for appellee Board
of Commissioners of Franklin County.

MOYER, J. These appeals are from an
order of the Ohio Environmental Board of
Review which affirmed an order of appel-
lee Wayne S. Nichols, Director of the Ohio
Environmental Protection Agency ("di-
rector"), granting to appellee Board of
Commissioners of Franklin County, Ohio
("commissioners") a permit to install a
sanitary landfill on the south side of State
Route 665, west of Interstate 71 in Jack-
son Township, Franklin County, Ohio.
Appellant Southwest Jackson Township
Civic Association is a nonprofit corpora-
tion which represents approximately five
hundred families, the majority of which
reside in Jackson Township or Grove City,
Ohio. Appellant Donald Rings is president
of the association.

In December 1980, the commissioners
purchased approximately two hundred
acres of land on State Route 665 for the
purpose of establishing a county landfill
and later filed an application with the
Ohio Environmental Protection Agency
("EPA") for a permit to install a landfill
on the site. Appellants assert that the
commissioners failed to consider the im-
pact the proposed landfill would have on
the property and the lives of the people
living in the area. They also contend that
there are other geologically similar sites
for the landfill which would be more suit-
able than the proposed site.

Appellants' request for a hearing on
the pending application was denied by the
director who approved the application and
granted the permit. Appellants appealed
the issuance of the permit to the Ohio En-
vironmental Board of Review ("board").

The board heard oral arguments con-
cerning several preliminary legal issues
presented by appellants. Thereafter, the
board issued a two-to-one decision in
favor of appellees. The dissenting
member concluded that the issuance of
the permit should have been reversed
because the director of the EPA failed to
grant appellants a pre-adjudication hear-
ing and because the director should have
stated his express findings in his order is-
suing the permit.

An evidentiary hearing was held by
the board in 1982 on all issues raised
by appellants. Appellants presented evi-
dence concerning the character of the
neighborhood surrounding the site and
testimony that the presence of the landfill
in the area would have an adverse effect
upon the values of nearby property.

The director conceded at the hearing
that when he granted the permit he was
unaware of the specific character of the
area around the site. He testified that he
was not apprised that a dairy farm was
immediately adjacent to the proposed
landfill and that he had not considered the
effect the odor, noise and litter from the
landfill would have on residents in the
area. However, the record contains evi-
dence that he considered the general
character of the area and the effect the
landfill would have on it.

After the hearing, but prior to the
board's issuance of the final order, a
board member retired. The remaining

two members voted to affirm the director's issuance of the permit with several modifications. Appellants assert the following seven assignments of error in support of their appeal:

"1. The EBR erred in not vacating Director Nichols' issuance of the permit in that, by failing to afford appellants a pre-adjudication hearing with respect to the commissioners' permit application, Director Nichols violated Ohio law.

"2. The EBR erred in not vacating Director Nichols' issuance of the permit in that the director unlawfully failed to consider the social and economic impact of locating a dump at the site.

"3. The EBR erred in not vacating Director Nichols' order issuing the permit to install in that, by failing to incorporate express findings into his order, the director violated Ohio law.

"4. The director and the EBR failed to properly identify the 'operator' of the dump and determine that the operator is competent.

"5. The EBR erred in misapplying the standard applicable to determining whether the location of the dump in this rural residential area will create a nuisance.

"6. The EBR final order is fundamentally flawed — Chairman Phillips' vote on the final order is inconsistent with his stated legal position.

"7. The EBR erred by affirming Director Nichols' issuance of the permit despite finding unlawfulness and/or unreasonableness, and by returning the matter to the director to remedy that unlawfulness and/or unreasonableness."

In support of their first assignment of error, appellants argue that their interests would be affected by the issuance of a permit to operate the landfill and that the director, therefore, should have held a pre-adjudication hearing in order that appellants' interests could be considered. The Supreme Court, in *General Motors* v. *McAvoy* (1980), 63 Ohio St. 2d 232, 238 [17 O.O.3d 143], held:

"* * * Where an application is to be approved or where it is totally inadequate in form or substance, it may be unnecessary to offer the applicant an opportunity for a hearing. In such situations interested nonparties can participate in the decision-making process through the mechanism of R.C. 3745.07.

"In sum, R.C. 3745.07 deals primarily with a distinct group of persons from those governed by R.C. 119.06. The latter statute protects the rights of applicants for licenses and permits, while the former does not primarily deal with the regulated parties but seeks to protect other indirectly affected parties."

Since appellants are not applicants, but interested nonparties, their hearing rights are expressly provided for in R.C. 3745.07. Although R.C. 119.06 provides that no adjudication order shall be valid without affording a pre-adjudication hearing, this section applies only to the parties whose interest is being determined. Appellants are not parties because their interests are not the subject of an EPA adjudication. This case is different than *Genoa Banking Co.* v. *Mills* (1981), 67 Ohio St. 2d 106 [21 O.O.3d 67], because the General Assembly has specifically provided for persons whose direct interest is not the subject of an adjudication order issued by the Director of EPA by adopting R.C. 3745.07, whereas there is no comparable statutory provision for persons or institutions who are indirectly affected by a decision of the superintendent of banks as the Genoa Banking Company was. In this case, it is the interest of the county commissioners who wish to construct and operate a landfill facility that is the subject of the adjudication provided for by R.C. Chapter 119. As unregulated, "other indirectly affected parties," appellants must seek their protection from the actions of the director under R.C. 3745.07. Appellants' first assignment of error is overruled.

In support of their second assignment of error, appellants argue that the direc-

tor must consider any social and economic impact a proposed landfill will have upon the area surrounding the proposed site. Ohio Adm. Code 3745-31-05(A) lists some of the criteria the director must consider when deciding to issue an installation permit. Ohio Adm. Code 3745-31-05(B) lists criteria the director may consider, including social and economic impacts. Reviewing courts must defer to an administrative agency's interpretation of its own regulations. *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St.2d 173 [58 O.O.2d 393]. The director testified that Ohio Adm. Code 3745-31-05(A) is mandatory and that Ohio Adm. Code 3745-31-05(B) is discretionary. That opinion is consistent with the plain language of the regulation. Therefore, the director has discretion, but no duty, to consider social and economic impacts that may result if a permit is issued.

The primary factor the director must consider under Ohio Adm. Code 3745-31-05 is the environmental impact that would result from an issuance of the permit. It requires a determination that the facility will not violate any state or federal effluent emission and ambient water quality or air quality standard. While it perhaps would be desirable for the director to consider social and economic factors, we find no duty that he do so. The second assignment of error is therefore not well-taken and is overruled.

Appellants' third assignment of error is also not well-taken. The regulations in Ohio Adm. Code Chapters 3734 and 3745 do not require the director to make any written formal findings of fact prior to the issuance of the permit. Furthermore, it is clear from the journalized letter the director sent to the county commissioners that the permit was issued pursuant to Ohio Adm. Code Chapter 3745. The board on appeal held that the issuance of the permit complied with Ohio Adm. Code 3745-31-05(A) and (B). The board was not required to include the exact language of the regulations in its order. The record in-

dicates that the director concluded, prior to the issuance of the permit, that Ohio Adm. Code 3745-31-05(A) and 3745-27-06(H)(1) through (4) were met by the applicants. The authorities cited by appellants in support of their argument that the director was required to state his specific findings on the requirements of Ohio Adm. Code 3745-31-05(A) and 3745-27-06(H) are all concerned with statutory rather than agency rule requirements that an agency state the specific reasons for its decision. There is no such requirement with respect to the director's action in this case. Appellants do not argue that they were in any way prejudiced by the director's failure to state his specific findings when he granted the permit to install. We hold that the director was not required to specifically state his findings under Ohio Adm. Code Chapter 3745-31 and that his journalized permit to install, which stated it was issued pursuant to Ohio Adm. Code Chapter 3745-31, gave appellants sufficient notice of the reasons for issuance of the permit. The third assignment of error is overruled.

Ohio Adm. Code 3745-27-06(H)(3) provides that:

"(H) The Director shall not approve any detail plans, specifications, and information unless he determines that:

"* * *

"(3) the person identified as the operator of the solid waste disposal facility is competent and qualified to operate the solid waste disposal facility * * *;

"* * *"

"Operator" is defined as: "the person responsible for the direct control of operations at a solid waste disposal facility." Ohio Adm. Code 3745-27-01(O).

The following testimony of the director indicates that he knew the Franklin County Commissioners would not be the direct operators of the landfill, that he did not know who the operators would be and that he, therefore, could not know anything about their environmental record:

"Q. Were you advised, at the time

you approved this permit, as to the identity of the company that would come in and oversee the direct operations of the landfill?

"A. No, sir.

"Q. So you didn't know, at the time you approved the permit, who it was that would have direct control of the daily operations at the landfill?

"A. That's correct, sir.

"Q. Well, if you didn't know, we can agree, can't we — You didn't know the identity of this operator. We can agree that you didn't check out whether this operator has had a good environmental record in the past?

"A. Well, since, as I have related to you, this is a rather normal procedure, what we have been doing in the case of larger landfills of this nature, is requiring that a professional engineer monitor the operation of the site. And that is one of the conditions in here.

"Q. He's going to monitor it?

"A. That's correct.

"Q. But my question, sir, was: That since you didn't know what company was going to be retained to be the direct operator of this facility, you couldn't check out the environmental record of that operator, could you?

"A. That's correct, sir.

"Q. And you did not before you issued the permit?

"A. Well, that is right."

With that testimony before it, the Environmental Board of Review concluded that: "The Board of Commissioners of Franklin County is the operator of the proposed landfill as that term is defined in 3745-27-01(O), because it or its employees will be in direct control of daily operation of the landfill." There is no evidence indicating that the three commissioners of Franklin County or their employees will directly control the daily operations of the landfill. In fact, the unequivocal testimony of the Director of EPA is directly contrary to that conclusion.

It would appear that Ohio Adm. Code 3745-27-01(O) requires the EPA to determine that the direct operator of a waste disposal facility is competent and qualified to operate said facility because of the need to be sure that solid waste facilities are operated in accordance with their permits. With the all too apparent potential for using solid waste disposal sites inappropriately, the regulation appears to be directed at assuring the public that the Environmental Protection Agency will use its expertise in determining whether the person or company that is responsible for the day-to-day operations of the disposal facility is competent to operate said facility. Under the facts in the transcript, the county commissioners will no more be in "direct control" of the solid waste disposal facility than they are in direct control of a private contractor whom they hire to repair a county building.

To be sure, there is nothing in the transcript indicating that the county commissioners would not attempt to hire a competent and qualified company to operate the solid waste disposal facility. The evidence indicates they have responsibly hired a contractor to operate the county's existing landfill. However, that is not the issue. It is the contractor, not the county commissioners, who will be at the site and who will operate the landfill either in accordance with the permit and the regulations or not. The nature of the substances deposited in solid waste landfills can affect the health and safety of many people. The Director of the EPA should strictly observe Ohio Adm. Code 3745-27-01(O). The fourth assignment of error is well-taken and is sustained.

Because they are interrelated, the fifth and seventh assignments of error are considered together. Our standard of review for an appeal from the Environmental Board of Review is to determine whether the board's order is supported by reliable, probative and substantial evidence and is in accordance with

law. R.C. 3745.06; *Perry Township Trustees* v. *Earnhart* (Aug. 19, 1980), Franklin App. Nos. 80AP-16 and -32, unreported. Therefore, it is the board's order which affirmed in part and vacated and modified in part the order of the director that we are required to review in this appeal. Appellants argue that the board could not affirm the order of the director and also vacate and modify a part of the order. They cite R.C. 3745.05, which states that, if the board finds that the action of the director from which the appeal is taken to the board was lawful and reasonable, it must affirm the action and that, if it finds the action of the director was unreasonable or unlawful, it must vacate or modify the action. We believe the statute should not be interpreted to place the board in the technical straitjacket appellants have tailored for it. While we agree that there is some inconsistency in the board's findings of fact and its final order, a close reading of the board's procedural record and the final order causes us to conclude that the board was adding to the requirements imposed by the director and did not exceed the statutory authority.

The record of the board includes a "Notice of Intent To Rule and Order for Proposed Findings of Fact, Conclusions of Law and Final Order," which was issued September 9, 1982, and which contains the statement that the board "intends to rule to affirm the permit in part, vacate the permit in part, and modify the Permit to Install. Appellees [the director and the county commissioners] are ordered to prepare and submit a proposed set of Findings of Fact, Conclusions of Law and Final Order which addresses the assignments of error as reflected in the *de novo* proceeding and includes the following modifications to the Permit to Install. Those portions modified must first be vacated." Following that statement is a list of the modifications which includes the modifications that are a part of the board's final order.

On November 19, 1982, the director and the commissioners filed their proposed findings of fact, conclusions of law and order which states the seven modifications that were adopted verbatim in the board's final order. It is significant that the board added to its final order the statement that "[t]he parties have agreed to all the modifications which are included in this final order. Therefore, the Board has not detailed with specificity the reasons for changes ordered in the modification to this permit to install." It is also significant that the modifications do not appear to be design changes but merely additions to the design approved by the director which will give appellants additional protection against nuisance and pollution of their water. When the final order is read in the context of the record, it is clear that the board found that the director's order was unreasonable only to the limited extent indicated by the modifications. The board may affirm in part and vacate in part an order of the director. In *Perry Township Trustees, supra,* we affirmed an order of the board which found that the director's order was based upon a valid factual foundation and was in accordance with law but which modified the director's order. There, the board stated a specific exception to its finding that the director's order was in accordance with law, a practice that unfortunately was not followed in the order here. However, we must give meaning to the board's intention in light of the procedural record before us. That conclusion is particularly compelling where the appellants are placed in a better position by the board's modifications than they would have been without the modifications.

Having determined that the board's order is not legally defective under R.C. 3745.05, we must now consider whether the board's order is supported by reliable, probative and substantial evidence and is in accordance with law under R.C. 3745.06. In making our determination, we must review the evidence before the director and the evidence presented to the board.

The board modified the director's order to add at least three provisions intended to increase the possibility that the proposed landfill would not create a nuisance. Ohio Adm. Code 3745-27-06 provides in part that:

"(H) The Director shall not approve any detail plans, specifications, and information unless he determines that:

"(1) establishment or modification and operation of the solid waste disposal facility will not create a nuisance * * *;

"(* * *)"

The record includes substantial evidence indicating that the director considered whether the landfill would create a nuisance to or interfere with the character of the residential area surrounding the proposed site. The section chief for the Divisions of Hazardous Materials Management and Land Pollution Control testified concerning the plans and the application submitted by the commissioners regarding control of dust, noise, odor, litter, birds and other potential problems raised by the residents. The record also includes evidence that the plans provided design parameters, engineering features and operational techniques. The facility is to be located at a remote area visually inaccessible and not close to the residents. Moreover, there is testimony that the facility is designed to meet all applicable regulations of the EPA and will comply if the facility is operated in accordance with the approved plans and permit conditions. The same section chief testified specifically that, if the landfill is operated in accordance with the plans, it will not interfere with the attainment of any water quality standards, ambient air quality standards, and will not create a health hazard nor a nuisance; and that it will comply with all applicable solid waste regulations and PTI regulations.

While the director testified he did not consider the total effect the landfill would have on the surrounding land and that he did not consider the effect it would have on specific owners of land, the board's modifications appear to be responses to specific complaints by appellants. Our review of the entire record causes us to conclude that the order of the board is reasonable and lawful. The fifth and seventh assignments of error are overruled.

In support of their sixth assignment of error, appellants contend that, because board member Phillips dissented from a ruling of the other two board members with respect to four of the eighteen assignments of error filed by appellants in their appeal from the director's order and then signed the final order which incorporates those findings, the board therefore did not render a valid majority decision. The final order, which was signed by Phillips and one other board member, expressly refers to the assignments of error that had been previously decided and does not purport to dispose of those assignments of error. Phillips' dissent from the majority's disposition of four of the eighteen assignments of error did not prevent him to vote to reverse the order of the director on the remaining assignments of error. The majority's disposition of the first assignments of error resolved those issues and all members of the board, whether in the majority or minority, were bound by that decision. Having voted in the minority on the disposition of the first assignments of error, Phillips was certainly not compelled to vote to overrule the director's order if he believed the remaining assignments of error should be overruled. Such a "grudge vote" would hardly be an example of responsible decision-making.

In the alternative, the ruling disposing of the first four assignments of error states that the board "cannot find justification *at this time* to support the above assignments of error." (Emphasis added.) That condition suggests that the board members may change their ruling after hearing the evidence with respect to the remaining assignments of error. The sixth assignment of error is not well-taken and is overruled.

For the foregoing reasons, ap-

pellants' assignments of error one, two, three, five, six and seven are overruled and assignment of error four is sustained, and the order is therefore reversed and the case is remanded to the Environmental Board of Review for further proceedings consistent with this opinion.

*Orders reversed*
*and case remanded.*

STRAUSBAUGH, J., concurs.

REILLY, J., concurs in part and dissents in part.

REILLY, J., concurring in part and dissenting in part. I concur in overruling the first, second, third and fifth assignments of error, but must respectfully dissent as to the fourth assignment of error. Although the record indicates that the Franklin County Commissioners considered hiring a private firm to participate in some phase of the operation of the new landfill, there is also sufficient evidence in the record to indicate that it is the county which will occupy the position of "operator" of the landfill, as that term is used in Ohio Adm. Code Chapter 3745-27. An operator is "the person responsible for the direct control of operations at a solid waste disposal facility." Ohio Adm. Code 3745-27-01(O).

In its "Findings of Fact and Final Order," the EBR concluded that the Board of Commissioners of Franklin County was the operator of the proposed landfill, and that based upon the record of operation of the current Franklin County landfill they were competent. In support of this conclusion the EBR cited the testimony of Director Nichols and Steven Rath of the EPA, as well as James Mentel of Franklin County. This testimony indicated that the present Franklin County landfill is operated by the Franklin County Commissioners, that the daily operation of the present landfill is conducted by an outside corporation under the on-site

supervision of a full-time county employee, and that the proposed facility is to be operated in the same manner.

The record shows that the Franklin County Commissioners were expressly listed as operator of the proposed landfill on the application for the permit to install. It was also the testimony of Wayne Nichols, Director of the EPA, that it was the Franklin County Commissioners whom the EPA held "responsible for the operation of this site." While the excerpt of testimony of Nichols quoted by the majority indicates that the county intended to contract out a portion of the work to a presently unnamed concern, the testimony of Steven Rath, also of the EPA, indicates that it is still the Franklin County Commissioners who will occupy the position of operator. Rath, in response to a question posed by Thomas M. Phillips, Chairman of the EBR, stated that, while the Franklin County Commissioners employ a contractor at the present landfill site, the county supervises the daily operations of that landfill. Thus, the testimony was:

"MR. PHILLIPS: Fine. Well, maybe it seems to me it would be appropriate to ask if there was a violation clearly, a violation, clearly, that came to your attention in the operation of this landfill?

"To whom would you go in initiating some action to correct it?

"THE WITNESS: You're asking me that?

"MR. PHILLIPS: Yes.

"THE WITNESS: To the Franklin County Commissioners.

"MR. BAUMANN: Well, you're not going to call the Commissioners. Who are you going to call?

"THE WITNESS: We would call the license holder who happens to be the Franklin County — who will happen to be Franlin [sic] County Commissioners.

"MR. BAUMANN: Well, who would you call? The clerk? Or the Commissioner?

"THE WITNESS: I would call Leon Milford at the present site. I don't have

any idea who's going to be the staff person at the new site. Currently, a fellow by the name of Leon Milford is down there basically full time. And we —

"MR. BAUMANN: He's a county employee?

"THE WITNESS: I understand he is. Works out of the sanitary engineer's office, as I understand.

"MR. BAUMANN: County Sanitary Engineer?

"THE WITNESS: That's my — understanding. And if we have a problem, we call Leon up and say, Leon, we have a problem with so and so. As would the Franklin County Board of Health who actually has the day to day enforcement responsibility of the solid waste regulations in Franklin County."

This testimony is further reinforced by that of James Mentel, the county's project coordinator for the proposed landfill, who testified as follows:

"Q. Well, Mr. Mentel, have you been involved in the other landfill that I guess has about a two-year span of life left? Are you acquainted with — What I am really interested in is: What is the county's response — their historical record of response been to complaints about such things as litter, — That's the main one here. — Dust, and so forth in the other landfill? Do you know?

"* * *

"THE WITNESS: Mr. Phillips, we have personnel that are in control of that existing landfill operation that are down there daily. If these concerns that you have just mentioned, I can assure you the commissioners would immediately address those and take whatever measures were necessary to correct those."

Moreover, there was sufficient evidence in the record that the board of commissioners was competent to operate the proposed landfill. Both Director Nichols and Rath testified that the EPA had inspected the present Franklin County landfill, and had found it to be well run. Specifically, Director Nichols testified

that "it's one of the better ones that we have in the state, I would say. We would consider it a model landfill."

This is a most difficult question for all concerned, and unquestionably the operator should be properly identified to assure the proper operation of the landfill. In any event, there is sufficient evidence in the record to support the decision of the EBR that the board of county commissioners is the operator of the landfill, and that it is competent to do so. Therefore, the fourth assignment of error should be overruled and the order affirmed.