CLARK, D.B.A. AGAPE FAMILY CENTER
No. 2 AND No. 5, APPELLANT, *v.*
OHIO DEPARTMENT OF MENTAL
RETARDATION AND DEVELOPMENTAL
DISABILITIES, APPELLEE.

(No. L-87-291—Decided
September 16, 1988.)

*Roger Clark, pro se.*
*Anthony J. Celebrezze, Jr.,* attorney general, and *David Kovach,* for appellee.

*Per Curiam.* This appeal arises from decisions of the Ohio Department of Mental Retardation and Developmental Disabilities (hereinafter "department") revoking appellant's, Roger N. Clark, d.b.a. Agape Family Center No. 2 and No. 5, licenses to operate the aforementioned residential care facilities for mentally retarded adults (hereinafter "Center No. 2" and "Center No. 5"). Pursuant to R.C. 119.12, appellant appealed the license revocations to the Lucas County Court of Common Pleas, which affirmed the orders of the department. Appellant then filed timely appeals to this court which were consolidated.

A

In order to clarify the facts in this case, we first set forth the procedures required by the Ohio legislature and the department with respect to revocation of a license of an operator of a residential care facility such as Center Nos. 2 and 5.

R.C. 5123.19 delegates to the

Director of the department the authority to license and inspect such residential care facilities and to adopt such rules and procedures necessary to carry out this duty subject to the mandatory guidelines of R.C. Chapter 119. The department did promulgate such rules which were incorporated into the Ohio Administrative Code as Chapter 5123.

The agency rule pertinent to both cases on appeal is Ohio Adm. Code 5123:2-3-07(O). That section provides in full as follows:

"The license shall be terminated whenever an operator does not return the application for license renewal or does not pay the annual renewal fee, and the residential care facility shall be deemed closed and so notified by the licensure office in writing. Illegal actions or noncompliance with any applicable rule could lead to revocation of license (see 'Appendix E')."

Appendix E sets forth the specific procedure to be followed by the department during the revocation of license process and reads in pertinent part as follows:

"3.2.1 Whenever an operator fails to comply with the licensure rules set forth as minimum standards such as abuse, neglect, inadequate supervision, denial of residents' rights, disregard for the safety and health [*sic*] residents, inadequate care, disregard for medical care and treatment, record-keeping, etc. a warning letter is sent by certified mail/return receipt requested, signed by the Licensure Manager and approved by the Director. All particular citations will be listed as well as statements reminding the operator that the Licensure Specialist submitted the citations in writing and had done the necessary work to help bring the operation into compliance. A time limit of 30 days will be set for the operator to reply and submit a plan of corrections. The operator is warned that if no reply is received within the time limit that recommendations will be made to the Director to revoke the license. This action will be entered into the Director's Journal Entry Ledger.

"3.2.2 Frequent visits (announced and unannounced) will be made to the facility by representatives from the Department of Mental Retardation/Developmental Disabilities. If the visits to the facility reveal that the particular violation or violations are still outstanding, and that the operator has not submitted a plan of correction, a letter is sent by certified mail/return receipt requested, signed by the Director giving his intention to issue an adjudication order revoking the license. A time limit of 30 days is set for the operator to request a hearing, in accordance with 119.06 of the Ohio Revised Code. This action is entered into the Director's Journal Entry Ledger."

The department interprets these rules as requiring the following process: If there was a serious life-threatening situation that was not immediately corrected or there was a history of non-compliance, the department would begin the revocation process by issuing a warning letter; thirty days would then be given for the operator to come into full compliance with licensure rules and correct the cited deficiencies; an announced follow-up survey would then be conducted to determine whether there was substantial compliance; and, if deficiencies continue to exist, a letter would be sent to the operator indicating the department's intention to revoke the operator's license and that the operator must request a revocation hearing to review the decision.

A major issue in each case on appeal is whether appellant was denied due process of law because the department failed to comply with its procedural rules.

R.C. 119.06 provides that no agency "adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with" R.C. 119.01 through 119.13. The agency's actions or rules must also not offend constitutional notions of due process. *Benckenstein* v. *Schott* (1915), 92 Ohio St. 29, 42, 110 N.E. 633, 636. In addition, the agency is also bound by any rules it promulgates which have the force and effect of law unless they are unreasonable or are in conflict with related statutes enacted by the legislature. *Parfitt* v. *Correctional Facility* (1980), 62 Ohio St. 2d 434, 436, 16 O.O. 3d 455, 456, 406 N.E. 2d 528, 530, certiorari denied (1980), 449 U.S. 1061; *Kroger Grocery & Baking Co.* v. *Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E. 2d 921, 924; *State, ex rel. Kildow,* v. *Indus. Comm.* (1934), 128 Ohio St. 573, 580, 1 O.O. 235, 238, 192 N.E. 873, 876. We must, however, give deference to an administrative agency's interpretation of its own rules and regulations if such interpretation is consistent with statutory law and the plain language of the rule itself. *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St. 2d 173, 181, 58 O.O. 2d 393, 398, 281 N.E. 2d 1, 8; *Rings* v. *Nichols* (1983), 13 Ohio App. 3d 257, 260, 13 OBR 320, 323, 468 N.E. 2d 1123, 1129. Therefore, in order to find that there was reasonable notice and a fair opportunity to be heard, we must find that the process required by statute or the department's rules was provided by the department.

## B

The pertinent facts involving Center No. 2 are as follows: On November 1, 1980, appellant was granted a license by the department to operate Center No. 2 in Hardin County, Ohio. That license was renewed annually, following inspections, through September 17, 1985.

The November 1982 renewal was conditioned upon the correction of several deficiencies. The next renewal survey occurred in January 1984. That survey indicated that some of the 1982 deficiencies had not been corrected and, further, that new deficiencies existed. In September 1984, another annual renewal survey was conducted. This report indicated some deficiencies which were repetitive of prior deficiencies and some which were new violations. The license was once again renewed, subject to the correction of these deficiencies. Unannounced follow-up visits were also made between October 1984 and May 1985. A report in December 1984 noted that all deficiencies except for the need for exterior painting and repair of the leaking roof had been completed. In May 1985, the license specialist noted several violations, some of which were citations contained in the September 1984 report.

Prior to the annual review in September 1985, reports from the county school were made that the residents were coming to school dirty and with clothes not properly cared for. In June 1985, a meeting between appellant and the department took place to discuss the issue of the residents' general appearance. As agreed at the meeting, a specialist for the workshop began to document the appearance of the residents through December 1985. These reports indicated that the personal hygiene of the residents was very poor and obviously unsupervised. For this reason, at an informal meeting of the department in August 1985, it was decided that no further placements would be made to Center No. 2. In addition, another survey was scheduled to be conducted in September to determine whether the complaints received were accurate.

After the September 1985 review, appellant was cited once again for the

failure to paint the exterior of the home. Appellant was not cited for the leaking roof inasmuch as he had contracted to have work done on it. New violations included broken windows, torn screens, damage to ceilings, and the need for new clothing for all residents. Appellant submitted a plan of correction which was approved by the licensure specialist.

One week later, another survey was conducted with additional citations being issued regarding the personal appearance and general hygiene of the residents.

A meeting was then held at the department regarding the recent surveys. The violations and failure to correct past violations were discussed. It was decided that surveys of all three Agape Family Center Facilities in Hardin County should be conducted. A licensure specialist from another area was called in to act as the primary surveyor to be accompanied by the prior licensure specialist. However, the primary surveyor did not review the department's records or discuss the situation with the previous surveyors prior to the survey.

During the special survey on October 22, 1985, the licensure specialists found the overall condition of Center No. 2 to be in bad shape. The home was very dirty, the kitchen was cluttered with dishes and uncovered food from prior meals, there was little food in the facility, buckets were placed around the home to catch water leaking from the ceiling, windows were broken, the stairways were obstructed, the bedrooms were cluttered, and the dressers were overstuffed with clothing. The next day, the surveyors returned to meet with appellant to review the records which should have been in the home but were missing. Some of the deficiencies from the previous day had been corrected but not all.

The next day, a departmental meeting was held to discuss the surveys and it was agreed that the residents should immediately be removed from Center No. 2. The residents were removed on October 24, 1985. The primary surveyor told appellant when she left a copy of the survey report that she was willing to work with him regarding correction of the listed citations and that she would be available sometime in November 1985.

Appellant had submitted plans of correction for the two September surveys and also submitted a plan on November 5, 1985, regarding the deficiencies found in the October review.

On November 11, 1985, appellant requested a revocation hearing on the removal of the clients because he felt that this was, in effect, the revocation of his license. This request was denied.

A letter of revocation was sent December 27, 1985, and again appellant requested a hearing. Appellant contacted the department to try to settle the matter informally. The department refused and scheduled a hearing for April 18, 1986.

The hearing examiner issued his report and recommendations on July 21, 1986. He found that there was no reliable, probative, and substantial evidence to support the charges and that the totality of the circumstances indicated that the department intended to close down Center No. 2 and probably all other Agape Centers. The examiner also found that the department had violated appellant's due process rights by failing to issue a warning letter after the October surveys. The examiner therefore recommended that the license not be revoked and that the residents be returned. The department, however, rejected the examiner's findings and recommendations and revoked appellant's license.

Appellant sought an appeal to the Lucas County Court of Common Pleas. The court upheld the department's ac-

tions. Consequently, appellant brought this appeal.

Appellant's first assignment of error states that:

"I. The trial court erred in adopting a liberal interpretation of R.C. [Chapter] 119 and in failing to hold that the Ohio Department of Mental Retardation, and Developmental Disabilities' (hereinafter referred to as Department) adjudication order issued October 2, 1986 was arbitrary, unreasonable, unconstitutional and in noncompliance with R.C. [Chapter] 119 to the serious prejudice and denial of due process to appellant."

Appellant contends that the trial court erred by liberally interpreting R.C. Chapter 119 and finding that the department did not fail to set forth its reasons for disregarding the findings and recommendations of the examiner as required by R.C. 119.09.

R.C. 119.09 governs the procedural requirements to be followed in an adjudication hearing. The provisions pertinent to this case read as follows:

"The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of the testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and *if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval.*" (Emphasis added.)

Appellant contends that the department's order does not contain the reasons for its disapproval of the hearing examiner's findings and recommendations. The department's order stated as follows:

"On July 21, 1986, the hearing examiner issued findings of fact, conclusions of law and a recommendation. In his written opinion, the hearing examiner 1) held that there was insufficient evidence presented by the department to carry it's [*sic*] burden as to the cited violations; 2) concluded that the department violated the operator's due process rights 'by failing to issue a warning letter as to the alleged deficiencies'; and 3) recommended 'that the license of the Agape Family Center #2 not be revoked and that the clients that [*sic*] were removed be returned.'

"A careful review of the testimony adduced and exhibits introduced at the hearing of April 18, 21, 22, 1986 reveals reliable, probative and substantial evidence sufficient for the Department to carry its burden of proof as to each cited violation.

"The department did not violate the operator's due process rights by failing to issue a warning letter. The need for and appropriateness of such a letter were obviated by the fact that the department had been forced to remove the residents from Agape Family Center #2 on October 24, 1985. This action, which was necessitated by conditions at the facility which had been determined to be a threat to the health and safety of the residents, was taken pursuant to Ohio Administrative Code 5123:2-3-07(N).

"Inasmuch as some of the cited violations could not be corrected once the residents were removed from the facility, issuance of a warning letter was unnecessary and unrealistic. By allowing conditions in the facility to deteriorate to the point where removal of the residents was necessary, the operator effectively waived any right he may have had to receive a warning letter.

"Accordingly, because of repeated failure over the years to meet licensure standards, and specifically because of violations cited in the revocation letter of December 27, 1985, the license issued to Roger N. Clark under Section 5123.19 of the Ohio Revised Code to operate the Agape Family Center #2 Home is hereby revoked."

The trial court found that reasons were stated and, in addition, that there was no prejudice to appellant by the department's not stating in detail its reason for rejecting the examiner's report. We find, however, that this letter clearly sets forth the reasons for rejecting the hearing examiner's recommendation. Specifically, the department stated that it did find substantial evidence to support the department's action and that appellant's due process rights were not violated. Furthermore, the department also stated that revocation was predicated upon the repeated failure to meet licensure standards and because of the most recent violations. Whether these reasons are supported by the record and the law is discussed below. At this point, however, the procedural requirement of setting forth the reasons for disapproving the examiner's recommendation has been met.

In a subpart to appellant's first assignment of error, he contends that the department and trial court erroneously based their decisions on the false assumption that appellant did not and could not correct current deficiencies and that he had a history of noncompliance. Since these arguments go to the substantive merits of this case, we will address them under Assignment of Error No. 3.

Accordingly, we find appellant's first assignment of error not well-taken.

In his second assignment of error, appellant argues that:

"II. The trial court erred to the prejudice of appellant in failing to hold,

that the rules, procedures, and processes adopted by the Department and applied to appellant in the removal of the residents and revocation of his license were arbitrary, unreasonable, unconstitutional and in violation [of] and non-compliance with R.C. 5123.19, R.C. [Chapter] 119, and Ohio Adm. Code 5123:2-3-07; and that an illegal 'systemic procedure' was intentionally adopted and applied to appellant denying him due process of law."

First, appellant argues that he was entitled to a hearing regarding the removal of the residents on October 24, 1985. His basis for this argument is that removal of residents and a refusal to return or replace them has the ultimate effect of a revocation of a license since he has been put out of business. Although there is no statutory or regulatory requirement that a hearing be held before or after the clients are removed, appellant argues that for due process to be meaningful, there must be a hearing regarding the removal of the clients.

Appellee counterargues that no hearing is required because the decision to remove the residents is not an adjudication order since it affected the rights, duties, privileges, benefits, or legal relationship of the residents but not appellant. See R.C. 119.01.

Ohio Adm. Code 5123:2-3-07(N) provides that "[t]he director may remove a resident from a licensed residential care facility if, in his opinion, conditions in the residential care facility jeopardize the health and safety of the resident." There is no reference in the regulations to a hearing at any time. In addition, appellant has not demonstrated that any statute, rule, or his contract with the state entitles him to any process at all. For this reason, we agree with the trial court that appellant is not entitled to a hearing before the residents are removed.

Appellant argues next that he was denied due process because he was not

sent a warning letter and given a chance to correct the deficiencies cited in the October 1985 survey.

In this case, the department did not send a warning letter. In its letter of intent to revoke appellant's license, the director stated that he was not bothering to send a warning letter inasmuch as the violations were so serious that the residents had to be removed and because appellant would not be able to correct the violations. The director also stated that the warning was being dispensed with to expedite the process.

The trial court found that appellant suffered no substantial prejudice because the warning letter was not sent since appellant had a chance to refute the claimed violations at the revocation hearing. This analysis, however, ignores the fact that the purpose of the warning letter is not to give notice of citations but rather to give the operator an opportunity to bring the facility into full compliance.

The testimony of various department officials confirmed that this process was normally followed. However, in this action, upon the advice of counsel, the department decided to forgo the warning-letter stage. Furthermore, the department refused to consider any of appellant's plans of correction submitted after the September 17, 1985 survey.

First of all, we reject appellee's argument that this regulation is a mere internal management regulation which does not affect private rights and therefore is not a "rule" as defined by R.C. 119.01(C) and (K). Appellee argues that if this regulation is not a "rule," then the agency need not comply with it. This regulation was clearly promulgated to enable an operator to prevent revocation of his license by correcting any deficiencies. In fact, it is a means of enforcement of the rules short of actual revocation.

Upon a close reading of Appendix E, we find that it requires a warning letter when revocation will be based on a failure to comply with licensure rules. The reason, as we have stated, is so that these violations can be corrected and the facility will continue to operate. However, when the license revocation is predicated upon an overall mismanagement as evidenced by a continual failure of the operator to meet the minimal standards set by the licensure rules, no correction of the situation is possible. The current "violation" relates to a compilation of repeated violations. Although most violations were corrected in the past, it is the fact that they existed at all that is the basis for revocation. Furthermore, once conditions became so bad that it was necessary to remove the residents, there was no way for the operator to correct those conditions without risking the lives of the residents by placing them back in the facility.

Therefore, we agree with the department that the warning in this case would have served no purpose. There was no way the appellant's past actions could be rectified. In addition, appellant was notified by the revocation letter of December 27, 1985 that his history of poor management was to be a major basis for the licensure revocation. Therefore, appellant had ample notice to be able to refute any statement made in that letter or the specific violations alleged. We do not agree, however, that it is ever permissible to dispense with due process for the sake of time alone.

Accordingly, we find appellant's second assignment of error is without merit.

Next, appellant argues that there was a systematic plan by the department to deny him due process. We have reviewed each of these allegations and find that they are all without

merit. The one allegation worth mentioning is that the department failed to send a copy of the hearing examiner's report to appellant within five days of its issuance. Since appellant has not shown that he was adversely affected by this delay, we also find that this argument is without merit.

In conclusion, we find that appellant was not denied due process and, therefore, find appellant's second assignment of error not well-taken.

Appellant's third assignment of error is that:

"III. The trial court erred to the prejudice of appellant in failing to hold that there is no reliable, probative and substantial evidence in the record to support the Department's finding and charges against the appellant, and their [*sic*] adjudication order issued October 2, 1986 revoking appellant's license is against the manifest weight of the evidence."

Furthermore, in his first assignment of error, appellant also argued that the order was based upon false assumptions that past violations had not been corrected and that he was not in compliance with the regulations at the time of the revocation.

Our standard of review of an agency is governed by R.C. 119.12, which provides that we must affirm the agency's (department's) order if there is any reliable, probative, and substantial evidence in the entire record to support it. Furthermore, Ohio Adm. Code 5123:2-3-07(O) permits the director to revoke an operator's license for noncompliance with any licensure rule. Therefore, the order revoking appellant's license must be upheld if we find that there is any evidence to support a finding that any one of the nineteen deficiencies existed. However, because the revocation in this case was also predicated on repeated violations of the rules, which negated the need for a warning letter, we must also find that a history of noncompliance existed or that the conditions of the home were so bad that the residents could not remain.

After a thorough review of the record, we find that although some of the cited violations were not proven, a majority of the more serious violations were supported by reliable, probative, and substantial evidence. In addition, there is also sufficient evidence to support a finding that appellant had previously been cited for various violations and that some of these deficiencies were not corrected within the time agreed upon. Therefore, the department had a justifiable basis for revoking appellant's license.

Accordingly, we find appellant's third assignment of error not well-taken.

### C

The second case on appeal deals with Center No. 5. The facts relevant to that appeal are as follows: Appellant was licensed to operate Center No. 5 in the fall of 1982 after the prior operator's license was revoked. During the initial licensure survey, appellant was cited for violations of the licensure regulations. Three months later, the license specialist found that these deficiencies had not been corrected. She therefore recommended to the department that the residents of Center No. 5 be immediately removed and appellant's license be revoked because he had not corrected the deficiencies which caused the residents to live in unsafe and unsanitary conditions. Six days later, the license specialist withdrew her recommendation because the life-threatening/safety deficiencies had been corrected. She did, however, recommend close monitoring of Center No. 5 to assist appellant with correction of the remaining violations and to improve operational standards.

In July 1985, a renewal survey was

conducted. Appellant was again cited for numerous violations.

As a part of the unannounced survey of all Agape Centers referred to above, Center No. 5 was also surveyed on October 22, 1985. That licensure specialist cited appellant for numerous deficiencies. Appellant's house parent signed the report and confirmed that all of the deficiencies existed except for one. Appellant was then told by someone from the department that appellant had ten days to submit a plan of corrections to the department. Appellant did submit a plan on November 4 or 5, 1985, stating that all corrections would be made by December 15, 1985. The department, apparently, did not respond to the plan or work with appellant to bring Center No. 5 into compliance. Without the department's assistance, appellant began to implement the plan anyway.

On December 27, 1985, the department issued a letter regarding its intent to revoke appellant's license because of the deficiencies noted in the October 1985 survey. The letter indicated that the center would be resurveyed after thirty days from the date of the letter to ensure that there was compliance with the licensure rules. If not, the license would be revoked.

The surveyor called appellant about one month after the aforementioned warning letter had been sent and told appellant that he would be conducting a follow-up survey shortly. Appellant indicated that all corrections had been made.

The follow-up survey took place on February 5, 1986. That survey revealed that some of the cited deficiencies, for which appellant had set a compliance deadline of December 15, 1985, remained uncorrected. New violations were cited as well. The licensure specialist therefore recommended that appellant's license be revoked.

Appellant claims to have corrected some of these deficiencies within one week after the follow-up survey. The department, however, refused to return to the center again once it had begun the revocation process. Therefore, on February 27, 1986, the department issued a revocation letter to appellant regarding its proposal to issue an order revoking appellant's license because of the failure to comply with the licensure rules enumerated therein and as previously warned.

Upon appellant's request, a revocation hearing was held on May 28 and 29, 1986. The hearing examiner filed her findings of fact and conclusions of law and recommendations on October 21, 1986. Appellant received a copy on October 31, 1986, and submitted his objections on November 12, 1986. The department accepted the hearing examiner's findings and recommendations and issued an order revoking appellant's license on November 14, 1986. Appellant appealed the order to the Lucas County Court of Common Pleas, which affirmed the department's actions on August 10, 1987.

As his first assignment of error, appellant asserts that:

"The trial court erred to the serious prejudice of appellant in finding appellant dilatory in the past in correcting licensure deficiencies and primarily basing its opinion and judgement [*sic*] for affirming the Department order of revocation on the clearly proven false assumption that there was a pattern of non-compliance. Therefore, revoking appellant's license on past and prior violations for which has [*sic*] was not afforded a meaningful hearing within a meaningful time and further denied the protections of R.C. [Chapter] 119 and due process of law."

The basic argument appellant attempts to make is that he was denied due process of law because his license was revoked based on alleged prior

deficiencies for which the department never issued a warning letter, nor gave appellant a hearing to contest the validity of the citations.

The trial court noted in its opinion that there was reliable, probative, and substantial evidence to support a finding that appellant had prior licensure deficiencies and that he had been dilatory in correcting them. However, references to appellant's past deficiencies were made by appellee only to show that the current deficiencies were not an aberration, but rather that they reflected a pattern of noncompliance. The trial court's decision to uphold the department's order, however, was directly based on the finding that there was reliable, probative, and substantial evidence that appellant had failed to correct deficiencies cited in the December 27, 1985 warning letter as directed and within the time limits set. Since that finding alone would justify the revocation of appellant's license based upon Ohio Adm. Code 5123:2-3-07(O) and Appendix E, at 3.2.2, it was not necessary for appellee to prove the prior deficiencies. Thus, even if, for the sake of argument, we ignore any testimony with regard to prior deficiencies, we must still affirm the order of the department because appellant was not in compliance with licensure rules on February 5, 1986, as required.

Therefore, we find appellant's first assignment of error not well-taken.

In his second assignment of error, appellant asserts that:

"The trial court erred to the prejudice of appellant in failing to hold that the rules, procedures and processes adopted by the Department and applied to Appellant in revocation of his license were arbitrary, unreasonable, unconstitutional and in violation [of] and non-compliance with R.C. 5123.19, R.C. [Chapter] 119 and OAC 5123:2-3-07, particularly Appendix E, such as to deny him due process of law."

Specifically, appellant is asserting that he should have been given thirty days to submit a plan of corrections after the October 22, 1985 survey and not ten days. Further, appellant argues that the department would not cooperate with him in approving appellant's plan of corrections and thereby violated its procedural rules.

Whenever a survey is conducted of a facility, a survey report is prepared by the licensure specialist. On the report the license specialist sets the time limit for correcting the violations or submitting a plan of corrections. R.C. 5123.19(D), which requires that the department (at least annually) inspect facilities, does not provide for a time limit in which an operator must bring the facility into compliance. The department has not promulgated any rule regarding this matter either. Thus, the licensure specialist is given the discretion as to the time limit to be set. There was testimony, however, that the department usually gave the operator ten days to respond, and if the plan was unacceptable, the operator was given an additional seven days to correct the plan.

However, once a warning letter is sent that the department intends to revoke the operator's license for noncompliance, Ohio Adm. Code 5123:2-3-07(O), Appendix E, 3.2.1 requires that the operator be given thirty days to submit a plan of corrections or to come into compliance.

In the case *sub judice,* the survey report of October 22, 1985, stated that appellant had ten days to correct the deficiencies or to submit a plan of corrections. Appellant testified that he spent four to five days preparing the report and submitted it on November 4 or 5, 1985. The plan of corrections stated that all the deficiencies would be corrected by December 15, 1985. On

December 27, 1985, a warning letter was issued stating that the operator's license would be revoked if he had not corrected the deficiencies noted in the October 22, 1985 survey within thirty days. Appellant was further warned by telephone one week before the follow-up survey on February 5, 1986, that the center had better be in compliance.

Based upon the above, appellant was not denied due process because he was given ten days to submit a plan of corrections after the October 22 survey. A warning letter had not yet been issued and, therefore, the thirty-day limit did not apply. If, at the time appellant received the warning letter, he had not been able to correct all the deficiencies, he could have submitted another plan of corrections for the department's approval. He did not. Instead, when appellant was contacted in January, he stated that all violations had been corrected and that the home was in compliance. Therefore, the department could send a revocation letter if it found that the operator was not in compliance after the thirty days had lapsed.

We do note that it does not appear from the record that the department cooperated with appellant regarding the approval of his plan of corrections submitted in November 1985. There was a meeting between the licensure specialist and appellant on October 24, 1985 to discuss the survey and some missing documents. However, there is no evidence of any further assistance to bring Center No. 5 into compliance.

We find, however, that appellant was not prejudiced by this violation of the department's procedural rules (specifically, Ohio Adm. Code 5123:2-3-07[O], Appendix E, 3.2.1). Appellant's plan of correction stated that he would bring the home into compliance by December 15, 1985. In reality, appellant had almost two additional months to make the corrections.

Furthermore, those cited violations which appellant disputed or did not understand were not the only violations which remained uncorrected on February 5, 1986. Thus, even with the department's cooperation, appellant has not shown that Center No. 5 would have been in compliance on February 5, 1986.

Therefore, we find appellant's second assignment of error not well-taken.

Appellant's third assignment of error states that:

"The trial court erred to the prejudice of appellant in failing to hold that there is no reliable, probative, and substantial evidence in the record to support the Department's findings, charges and order issued November 14, 1986 revoking appellant's license [and] is [, therefore,] against the manifest weight of the evidence."

As stated above, our standard of review in this case is limited. We must affirm the revocation order if we find any reliable, probative, and substantial evidence in the entire record to support the order.

Upon a thorough review of all of the evidence in this case, we find that there is reliable, probative, and substantial evidence that Center No. 5 was not in compliance with licensure rules on February 5, 1986, as required by the warning letter. Appellant even admits that all corrections were not made by that date. Furthermore, appellant has testified that these corrections were made within one week after the follow-up survey. This further support appellee's contention that Center No. 5 could have been in compliance on February 5, 1986. Whether Center No. 5 was in compliance after that date is irrelevant. The evidence clearly shows that appellant was late in correcting the currently cited violations. We must find, therefore, that the department properly revoked appellant's license.

Accordingly, we find appellant's third assignment of error not well-taken.

Having found that substantial justice has been done the party complaining, the judgments of the Lucas County Court of Common Pleas are affirmed.

*Judgments affirmed.*

HANDWORK and GLASSER, JJ., concur.

CONNORS, J., concurs in judgment only.